## City of Newport v. Silva.

(Decided May 19, 1911.)

## Appeal from Campbell Circuit Court.

1. Municipalities—Improvement Ordinance — Statute Authorizing —Validity—A provision of an ordinance relating to street improvements enacted by the general council of a city of the second class pursuant to "An act to amend and reenact section 3094, 3096, 3097, 3098, 3099, 3100, 3101, 3102, of the Kentucky Statutes, relating to the control and improvement of streets, public ways, landings, wharves, grounds and sidewalks in cities of the second class," being chapter 107, Acts 1910, containing the following: "Nor shall any error in the proceedings of the general council exempt any property from the lien for, or payment of, such taxes after the work has been done and accepted as provided by this section, but the general council or the courts in which suits are pending shall make such corrections, rules and orders to do justice to all parties concerned; and in no event shall the city be liable for any part of the cost of such improvements, except as provided in section 3096" is valid.

2. Street Railways—Improvement Taxes—Section 3096, Acts 1910—authority of General Council—Validity of Ordinance—Classification—Under section 3096 of Acts of 1910 (See Chapter 107, Acts 1910, page 306) the General Council of a city of the second class may, independently of any contract or requirement of the company's franchise, require a street railway company to bear its reasonable and proportionate part of a street improvement, and assess the cost on all its property assets and franchise.

3. The fact that the cost of a street improvement is made a lien only on the abutting property of those owning land abutting the improvement, while as to a street railway, it is made a lien upon all its property, assets and franchise, does not render such provision of the ordinance or act void, on the ground of unreasonable discrimination. The relation of a street railway to the streets is so different from that of the abutting property owners, there is no reason why street railways may not be classified so far as street improvements are concerned, upon an entirely different basis from that of the abutting property owners.

4. Installment Plan—Provision of Act and Ordinance Cutting off Defenses—Constitutionality—Where the ordinance and the Act pursuant to which it is enacted, provides that the property owner may pay on the installment plan, and that bonds may then be issued, but attaches as a condition to this right that the property owner shall agree in writing that he will make no objection to any illegality or irregularity in the proceedings, and that he shall not thereafter be permitted to set up any defense whatever against the payment of the taxes, and that he shall be estopped from questioning the validity of the bonds, such provision is not violative either of the Constitution of Kentucky or of the 14th Amendment to the Constitution of the United States, in that it deprives the taxpayer of his day in court, and consti-

tutes a taking of property without due process of law. Unless the taxpayer petitions for the right to pay on the installment plan he may contest and have his day in court.

5. The installment plan is for his benefit. It lightens his burden. It is within the power of the Legislature to say, "If you avail yourself of this liberal plan adopted for your benefit, you must accept the plan with the conditions attached."

6. General Council—Action—Conclusiveness—It is within the province of the Legislature to make the general council the judges of the necessity for the improvement, and also to provide that their determination of the question whether or not the work has been done in accordance with the contract shall be conclusive except in case of fraud or collusion on the part of that body, in view of the fact that ample notice is provided for as well as ample opportunity for the taxpayer to be heard.

C. T. BAKER for appellant.

L. J. CRAWFORD and L. J. CRAWFORD, Jr., for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing on original and affirming on cross appeal.

In the month of June, 1910, the general council of the city of Newport, a city of the second class, passed an ordinance entitled "An ordinance to amend and re-enact an ordinance prescribing the method of procedure governing and regulating the construction and reconstruction of all public ways and sidewalks in the city of Newport, Kentucky," approved August 27, 1906. This ordinance was approved by the Mayor on June 22, 1910, and is now in full force and effect. It was enacted for the purpose of complying with and carrying into effect "An act to amend and re-enact sections 3094, 3096, 3097, 3098, 3099, 3100, 3101 and 3102, of the Kentucky Statutes, relating to the control and improvement of streets, public ways, landings, wharves, grounds and sidewalks in cities of the second class," which became a law without the approval of the Governor. (See chapter 107, Acts 1910, p. 306.)

This suit was brought by appellee, Albert Silva, against the city of Newport, pursuant to section 3063, of the Kentucky Statutes, for the purpose of testing the validity of the ordinance. The ordinance is attacked on the ground that the act above referred to, and pursuant to which it was passed, is unconstitutional, and that in

one material respect the ordinance is broader in its scope than the authority conferred by the act.

On submision of the case the court held that the act and ordinance were both unconstitutional, to the extent that they sought to cut off defenses and conferred judicial power on the general council; also to the extent that it attempted to exempt the city from the payment of any part of the cost of street improvements except that provided for in the ordinance; and further, to the extent that it attempted to give authority to levy an improvement tax upon any corporation using the streets, independently of any contract ordinance. The other parts of the ordinance were held to be valid. From this judgment the city of Newport has appealed, and appellee has prosecuted a cross appeal from so much of the judgment as holds that the remainder of the ordinance is valid.

By the act referred to, a very elaborate system for improving the streets, public ways, sidewalks, etc., in cities of the second class is provided. The act is too long to be copied in an opinion; suffice it to say that it provides that the cost of improvements of public ways and sidewalks shall be made at the exclusive cost of the owners of real estate abutting on such improvements, with the exception of that portion of the street occupied by a street railway company, the cost of which is to be borne by the street railway company. The city is not liable for any part of the tax except for improvements in front of its property or for the improvement of street intersections.

Before the general council orders the improvement of any street, sidewalk, etc., it is required to adopt a resolution, designating the street or other public way or sidewalk proposed to be improved, and setting out in general terms the character and extent of the proposed improvement, and declaring such an improvement to be necessary. Such resolution must be published in one or more of the issues of the official newspaper for, at least, five days before the ordinance ordering such improvement shall pass either board of the general council. Where the abutting property owner designates the material to be used, or protests against that directed to be used, or protests against the improvement, the ordinance fixing the material or ordering the improvement

must be passed by a two-thirds vote of the members elected to each board of the general council.

The general council is given authority, upon petition of a majority of the property owners on a part of the public way proposed to be improved, to grant them permission to improve said public way under the supervision of, and within such time as may be fixed by, the board of public works.

Provision is made for notifying the abutting property owners of the time and place fixed for the reception of the work and for giving them an opportunity to protest, in writing, against the acceptance of the work. The general council is made the sole judge of the necessity of the improvement, and their determination whether or not the work has been done in accordance with the contract is final and conclusive and binding on all parties, except in cases of fraud or collusion on the part of the general council.

There is another provision to the effect that any assessment for street improvement that exceeds one-half the value of the lot or parcel of real estate upon which the assessment is made, shall be void as to such excess, but the improvement shall be taken into consideration in fixing the value of such real estate, and the general council may provide for the payment of any such excess out of the general fund.

Aside from the particular objections to the act, which will be hereafter noticed, we are of opinion that the changes made in the old law are principally in the interest of the taxpayer.

One of the provisions of the act, and the ordinance enacted in pursuance thereto, which is strenuously objected to, is as follows:

"Nor shall any error in the proceedings of the general council exempt any property from the lien for, or payment of, such taxes after the work has been done and accepted, as provided by this section, but the general council, or the courts in which suits are pending, shall make such corrections, rules and orders to do justice to all parties concerned; and in no event shall the city be liable for any part of the costs of such improvements, except as provided in section 3096."

A provision similar to the above was in force in cities of the second class prior to the adoption of the new act,

and is now in force in cities of other classes, and have been uniformly acted upon and held to be valid. (City of Louisville v. Clark, 105 Ky., 392; City of Louisville v. Gleason, 106 Ky., 125.)

It was certainly within the province of the legislature to enact that "in no event shall the city be liable for any part of the costs of such improvements, except as provided in section 3096," and that provision is, therefore, valid. The question of its interpretation is not now properly before us.

In section 3096 of the act in question there is the following provision:

"When in any such city, having therein a street railway the railway company is required by law or its franchise, or by any contract with the city, to pave or improve any part of the streets or alleys of the city, proposed to be improved, the cost of paving such portion of such streets or alleys shall be assessed against such railway company and a tax shall be levied upon all property, assets and franchises of such company in the city for the payment thereof. Such tax shall constitute a first lien upon all the property, assets and franchises of all kinds whatsoever, of such company within the corporate limits of the city, and shall be due and payable at the same time and in the same manner, and shall bear like interest as the taxes assessed against the abutting property. Such railway company shall have the right to construct its own part of such proposed improvement, and, if it shall do so, no tax shall be assessed against such company; provided, however, that such company shall, before the letting of the contract for such improvement, elect, by written request presented to the general council, to construct its part of such improvement, and shall execute a bond to the city with good and sufficient surety, to be approved by the Mayor, conditioned that it will do the work of improving such part of the street with such material and according to such plans and specifications, and within such time and subject to such provisions as the ordinance therefor may prescribe."

The provision of the ordinance on this subject is as follows:

"3. Each and every company maintaining or operating street railways within the limits of the city of

Newport, Kentucky, and who maintain and operate their lines and wires along, in and over the streets, alleys, highways, parks, public squares or other public places in said city, shall pave and improve the street between the rails of its said tract and eighteen inches on each side of its track or tracks and shall renew the paving of the streets between the rails of said track ad eighteen inches on each side thereof as often as the general council may order, and shall repair said part of said streets whenever, and in such manner as said general council may order and direct.''

The latter part of the above section is in the language of the act.

It will be observed that the language of the act authorizes the assessment of the cost of improvement of certain portions of the streets occupied by street railways only upon such railway companies as are required by law, or by their franchise, or by any contract with the city, to pave or improve any parts of the streets or alleys of the city, while the ordinance provides that each and every company maintaining or operating street railways within the city of Newport shall pave and improve the streets between the rails of its tracks and eighteen inches on each side thereof. The circuit court was of opinion that, unless the railway company was required by its franchise, or by a contract with the city, to pave or improve, the general council had no authority to order an improvement made at its expense. The statute, however, does not limit the right to assess the cost of such improvement upon the street railways only that were required by their franchises or contracts with the city to pave or improve, but gives the same right as to each railway company that is required by law to pave or improve. While it is doubtless true, that where the general council is given the right only to assess the cost of improvements upon abutting property owners, no right exists to assess any portion of such costs upon street railway companies, as they are in no sense abutting property owners. (City of Maysville v. Maysville Street Railway Co., 128 Ky., 673); yet, if there be legislative authority to assess any portion of the cost upon street railways, we see no reason why it may not be done; indeed, with few exceptions, the right to do so has been uniformly upheld. (The Cicero and Proviso

Street Railway Co. v. The City of Chicago, 176 Ill., 501; City of New Haven v. Fair Haven and Westville Railroad Company, 38 Conn., 422.)

The question, then, is: What effect must be given to the language "required by law." An examination of the language of the act above referred to, with regard to street railway companies, as well as to other portions of the act, convinces us that it was the clear and manifest purpose of the legislature to confer upon the general council power to enact an ordinance requiring street railway companies to pay their proportionate part of the cost of any street improvement. While the act does not say so in express terms, it does so provide by necessary implication. We think the words "required by law" apply in a case where the general council has passed an ordinance making such requirement; and we, therefore, conclude that section 3 of the ordinance above referred to is authorized by the act itself, and is, therefore, valid.

But it is insisted that the act and ordinance are discriminatory in that they provide for an assessment and lien against all the property, assets and franchises of a street railway company, whereas in the case of other property owners they provide for such assessments and liens only upon the property abutting the improvements. As a matter of fact, however, the only permanent, physical property that a street railway company has along any improvement is its rails. These, in and of themselves, are of but little value; its property is represented by its franchise, and the franchise is of such character that it can not well be divided up into parts; it represents one entire property and is incapable of subdivision. Furthermore, the relation of a street railway company to the streets is so different from that of the abutting property owners, we see no reason why street railway companies may not be classified, so far as public improvements are concerned, upon an entirely different basis from that of the abutting property owners. We, therefore, conclude that the Legislature and the general council adopted the only practical method of assessing the cost of the improvements against street railway companies, and that the ordinance is not invalid because one method of assessment is provided for them, and another for abutting property owners.

· But the chief objection to .the· act and·the ordinance· is found in section 3102, which ·provides that· bonds issued on a ten-year plan shall be negotiable as inland· bills·of exchange and shall be·free from all defenses by · any property owner; and further, that "after the issue of such bonds no suit shall lie to enjoin or resist the collection of any assessment or tax·in anticipation of which the bonds are issued, and the validity of the same shall not be questioned, but all property owners shall be conclusively estopped and precluded from in·any manner assailing the effectiveness or validity thereof." · It is claimed that this provision violates sections 2 and 14 of the Constitution of Kentucky, as well as the Fourteenth Amendment to the Constitution of the United States, in that they confer arbitrary power upon general councils and deprive the taxpayers and citizens of their day in court and constitute, therefore, a taking of their property without due process of law, and a denial to them of the equal protection of the law. The provisions, however, of section 3102 of the act must be construed in connection with the other provisions of the act. According to these provisions, the improvement tax is payable within thirty days. The abutting property owners may then contest payment. For that purpose, when suit is brought against the abutting property owner, he may enter the court and plead such defenses as he may have. But it is provided that the general council may provide for any improvement on the ten-year payment plan, and that "any person who desires to exercise such privilege of payment by installment shall, before the expiration of said thirty days, enter into an agreement, in writing, with the city, that in consideration of such privilege he will make no objection to any illegality or irregularity with regard to the taxes against his property, and that he will pay the same in the manner provided, with the specified interest, and that any property owner entering into such agreement, or who exercises the option to [pay in installments, shall be precluded thereby, and shall not be permitted to set up any defense whatever against the payment of such taxes." Here, then, the property owner may contest, if he desires. It is only when he requests the privilege of the ten-year plan that he is estopped from setting up any defenses. The ten-year plan is for his benefit. It enables him to pay a

small amount of the cost of the improvement each year. Consequently, the burden is much lighter. The Legislature, therefore, had the right to say, "If you avail yourself of this liberal plan provided for your benefit, you must accept the plan with the conditions thereto attached." The act does not deprive him of his day in court; he has the right to contest, unless he agrees, in writing, to the ten-year plan; it is only when he so agrees that he is estopped from setting up any defense. It is by his voluntary act that he is deprived of his day in court; and if that be true, and his property be taken, it can not be said to have been taken without due process of law. There is no merit in the contention that he is denied the equal protection of the law; all others similarly situated are affected in the same way. (Page & Jones, Taxation by Assessment; Quill v. City of Indianapolis, 124 Ind., 292.)

Nor do we think that the act, or ordinance enacted in pursuance thereto, is invalid because it confers upon the general council the power to determine the necessity for the improvement and to determine finally whether or not the improvement has been made in accordance with the contract, except in case of fraud or collusion on the part of the general council. In making the general council the judge of the necessity for the improvement the Legislature simply put into the statute a doctrine that has long been recognized by the courts. (Mudge, et al. v. Walker, et al., 28 Ky. Law Rep., 996; Trustees of Hazel Green v. McNabb, 23 Ky. Law Rep., 811; Beckwith v. Louisville Artificial Stone Company, 20 Ky. Law Rep., 1781; Abbott on Municipal Corporations, section 393.)

And in view of the fact that the abutting property owners are given the right, under certain contingencies, to do the work themselves, and, in case they do not, the act and ordinance provide for due notice and full opportunity to protest, as well as to be heard on the question whether or not the work has been performed in accordance with the contract, we think it was within the province of the Legislature to confer upon the general council, whose members are on the ground and can best determine the question, the power finally to determine whether or not the work has been performed in accordance with the contract, except in case of fraud or collu-

sion on the part of that body. Of course, except in those cases where the abutting property owner has applied, in writing, for the privilege of paying on the installment plan, he may still contest where there has been a failure to observe those provisions of the act or ordinance which are jurisdictional in their character.

After careful consideration of the act in question, we fail to find wherein it is unconstitutional, either in whole or in part; and, as the ordinance was enacted pursuant to the authority therein contained, we also conclude that it is valid.

Judgment reversed on the original appeal, and affirmed on the cross appeal.