## Commonwealth, on Relation, etc. v. Southern Railway Company.

### Same v. Same.

(Decided November 18, 1921.)

## Appeals from Woodford Circuit Court.

1. Taxation—Intangible Property of Corporations—Assessment.—Kentucky Statutes, sections 4077-4091, inclusive, are intended to provide a method for ascertaining the value and assessment of intangible property of corporations exercising any special or exclusive privilege or franchise in Kentucky not allowed by law to natural persons, whether the corporation be foreign or domestic; and all corporations exercising such a privilege are amenable to the provisions of the statute whether the privilege be exercised in its name or in the name of another which it adopts.

2. Corporations—"Doing Business."—Mere ownership of stock in one corporation by another, though it be of the entire stock, is not sufficient of itself to render the corporations identical or to constitute "doing business" by the holding corporation, if a foreign one, within the jurisdiction of the corporation whose stock is held; nor will the mere maintenance by a foreign corporation of an office for the only purpose of soliciting business or traffic (if it is a carrier corporation), constitute "doing business" in the jurisdiction where the office is maintained. And the question whether the holding corporation is doing the business in the name of another is one of fact to be determined by the testimony in the case, since courts look at the substance rather than the shadow, and determine things as they are and not what they appear to be. If, therefore, the testimony shows that the business is being transacted by the holding corporation through its direct management and control, it will be held as the one doing the business though nominally done in the name of another.

3. Taxation—Railroad in Kentucky Owned by Virginia Corporation—Franchise Tax.—A director of the Southern Railroad Company, a Virginia corporation, bought at decretal sale 127 miles of railroad lines in Kentucky, and soon thereafter transferred the property to the Southern Railway Company in Kentucky, a corporation

organized by the Virginia company, which owned all of the stock in the Kentucky company. The officers of the two companies are the same and the directors of the Kentucky company are also directors of the Virginia company. The latter company supplies and pays for all rolling stock needed by the Kentucky company for keeping intact the original amount purchased and without charge to the Kentucky company. The lines of the latter company are advertised as a part of "the Southern Railway system" by bulletins at all the depots on the Kentucky line, and are reported to the Interstate Commerce Commission as being merged in the lines of the Virginia company, and also reported to its stockholders that it owned the Kentucky lines. The receipts from the operation of the Kentucky lines are sent to a common treasurer at Washington. Held, that the Virginia company was exercising the franchise and privilege referred to in section 4077 of the statutes, though in the name of the Kentucky corporation, and that it is required to make the reports required by the statute and to assess and pay Kentucky's portion of its intangible property.

L. W. MORRIS, HAZELRIGG & HAZELRIGG, WILL D. JESSEE and HOBSON & HOBSON for appellant.

HUMPHREY, CRAWFORD & MIDDLETON and WALLACE & HARRIS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing the judgment in each case.

The Commonwealth of Kentucky on relation of Robert Hawkins, sheriff of Woodford county, filed two statements in the county court of that county under the authority given by section 4241 of the statutes by which it was sought to list for taxation, as omitted property, for the years 1914-1918, both inclusive, the proportionate part of the intangible property of defendant, Southern Railway Company, that its alleged owned and controlled lines in Kentucky bore to its owned and controlled lines constituting its entire railway system. The statement seeking the relief for the years 1914, 1915 and 1916 was filed against Southern Railway Company alone, and the one seeking the same relief for the years 1917 and 1918 joined with the company the Director General of Railroads, who for those two years operated defendant's railway system under the Federal Control Act. The facts governing the right to assess the property for each of the years are the same, and the two statements were heard and disposed of in the courts below as one case.

In each statement it was averred in substance that defendant, Southern Railway Company, which is a Virginia corporation, owned, operated and controlled, in round numbers, one hundred and twenty-seven (127) miles of railroad in Kentucky, running from the city of Louisville, in Jefferson county, to Danville, in Boyle county, with branches running to Versailles, Georgetown, Lexington, and perhaps other points, but which were ostensibly owned and operated by a Kentucky corporation known as "Southern Railway Company in Kentucky;" that it so owned, operated and controlled thirty-eight and a fraction miles of railroad trackage in Kentucky, ostensibly owned and operated by the Mobile and Ohio Railroad Company; that it likewise owned, operated and controlled one and three-fourths (1¾) miles of railroad in Bell county, ostensibly operated in the name of Cumberland Railway Company, and also owned, operated and controlled 12.9 miles of railroad in Knox county, Kentucky, ostensibly owned and operated by the Cumberland Railroad Company; and that defendant entirely omitted to make any report to the Auditor of Public Accounts of the state for either of the years involved as is required by the provisions of section 4078 of the statutes, as a basis for the assessment of Kentucky's portion of its intangible property and that none of said property had been assessed except that which was assessed to, and paid by, the ostensibly owning corporations before mentioned, and which amounts so assessed and paid were not the true ones to which the state was entitled.

The answer to each statement denied the material allegations therein and affirmatively alleged the assessment and payment of the local franchise taxes due from the various divisional units or railroad lines referred to, as a bar to any right of recovery. Appropriate pleadings made the issues and upon submission the county court dismissed each proceeding, from which the Commonwealth by the sheriff, its relator, procured an appeal to the Woodford circuit court and a similar judgment was rendered by that court in each case, to reverse which these appeals have been brought to this court and by agreement are heard together.

There were searching interrogatories attached to each statement which were unreservedly answered by the defendant, and those answers, including the exhibits filed therewith, and an agreed stipulation signed by the parties,

furnished the facts upon which both the county and the circuit court based their respective judgments, and which facts must also govern us in the disposition of these appeals. We will defer a consideration of the facts for the moment while we briefly notice the law in Kentucky with reference to taxing intangible property of corporations, both foreign and domestic, and the methods pointed out therein by which the value of such property as has a taxing situs within the taxing authority for such purposes, may be ascertained and assessed.

Prior to the original enactment of sections 4077-4091, both inclusive, of the Kentucky Statutes, being subdivision 1 of article 4 of chapter 108, corporations neither assessed nor paid any franchise property tax, which, it has been held, is but another name for intangible property. The only property upon which taxes were assessed and paid prior to that time was tangible property. It was discovered, not only in Kentucky but elsewhere, that in addition to their tangible property many corporations, because of the use of such property in the manner permitted by the sovereignty creating them or under whose permission they operated locally outside of the state of their creation, increased the total value of their property largely in excess of their tangible property, which excess grew out of the exercise of the privileges conferred in the use of their tangible property, and such excess valuation is referred to in the books, sometimes as the corporation's franchise, but it is now come to be more generally designated as *intangible* property, and is universally regarded and held to be a legitimate subject of taxation. The class of corporations which the statutes make liable for taxes or their intangible property are set forth in section 4077 of our statutes in this language: "Every railway company or corporation, and guarantee or security company, gas company, water company, ferry company, bridge company, street railway company, express company, electric light company, electric power company, telegraph company, press dispatch company, telephone company, turnpike company, palace car company, dining car company, sleeping car company, chair car company, and every other like company, corporation or association also every other corporation, company or association having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons, or performing any public service, shall, in addition to the other

taxes imposed on it by law, annually pay a tax on its franchise to the state, and a local tax thereon to the county, incorporated city, town or taxing district, where its franchise may be exercised.''

In order to enable the assessment board to properly value the franchise, or the intangible property subject to taxation in this state, section 4078 of our statutes requires all corporations subject to the payment of the tax to file a report between the thirtieth day of June and the first day of October of each year with the Auditor of Public Accounts setting forth the facts therein stated, and if the corporation is a common carrier with lines extending beyond the confines of this state, section 4079 requires the statement of additional facts in such report, among which are ''the length of entire lines operated, owned, leased or controlled in this state, and in each county, incorporated city, town or taxing district, and the entire line operated, controlled, leased or owned elsewhere.'' The latter section also requires that the corporations referred to therein shall also report ''the gross and net income or earnings received in this state and out of this state, on the business done in this state, and the entire gross receipts of the corporation, company or association in this state and elsewhere during the twelve months next before the thirtieth day of June of the year in which the assessment is required to be made.'' The two following sections, 4080 and 4081, furnish formulas to guide the assessing board in arriving at the true value of the intangible property subject to taxation in this state. Since the enactment of the sections referred to, all corporations coming within their purview have made the required reports to the Auditor of Public Accounts, and have been assessed and have paid the taxes on the due proportion of their intangible property, which, under the statutes, has a taxable situe in this state; and it is admitted by the defendant that if it was *doing business* as a common carrier in this state it would be subject to the franchise tax provided by the sections of the statute and to the payment of taxes on its proportion of intangible property in Kentucky. But it insists that it did not make the report required by the statute to the Auditor of Public Accounts, and that it is not liable for any franchise tax or taxes on any intangible property sought to be assessed because it does not now nor has it ever exercised ''any special or exclusive privilege or franchise not allowed

by law to natural persons'' in Kentucky; that the only business which it does in Kentucky is to maintain an office for the purpose of soliciting freight and other business for its railroad system out of Kentucky, which is not the exercise of such a privilege as subjects it to the character of taxes sought to be recovered, and that the business which is performed in Kentucky, under the character of special privilege mentioned, is conducted solely by other corporations which are separate and distinct from it and wholly independent of it. The Commonwealth on the other hand insists that the conducting of the business in Kentucky by the other corporations referred to is in name only, and that in reality that busi-. ness is conducted and the privilege to do so is exercised by the defendant alone through the nominal agency of the respective local or subsidiary corporations, and that defendant is liable for and should be required to assess and pay the taxes involved.

The first question, therefore, is one of fact, which requires for its determination a return to the answers of defendant to the interrogatories propounded to it and to the written stipulation agreed to and filed by the parties. To undertake to insert herein defendant's answers to the interrogatories, and the parts of the stipulation containing the decisive facts, would be an unnecessary consumption of time and space, and we will content ourselves by giving the substance of what is shown by them as constituting the facts.

The defendant was incorporated in Virginia on February 20, 1894, and acquired and operated a railway system in Virginia, and other states, until now it owns and operates in its name, in states outside of Kentucky, railroad lines aggregating more than nine thousand miles. In 1868 the legislature of this state incorporated the ''Louisville, Harrodsburg and Virginia Railroad Company,'' which constructed and operated a part of the one hundred and twenty-seven miles of line now ostensibly owned and operated by the ''Southern Railway Company in Kentucky.'' In 1884 the charter of the Louisville, Harrodsburg and Virginia Railroad Company was amended and the name of the company changed to ''Louisville Southern Railroad Company,'' and it subsequently acquired some branch lines which had been constructed by other local railroad companies. In the meantime the Louisville Southern Railroad Company leased its line

of railroad to other railroad companies and in July, 1893, it made default in the payment of interest on its bonded indebtedness, which resulted in a foreclosure proceeding in the circuit court of the United States for the District of Kentucky, in which there was a decree for the sale of its property, and at that sale a director of the defendant, Southern Railway Company, purchased the property, which was paid for by the defendant and it, on August 17, 1894, caused the "Southern Railway Company in Kentucky" to be organized with defendant subscribing for all of the stock except a few shares held by its directors, but only for the purpose of forming the corporation, the stock being held by the individual stockholders in reality for the use and benefit of defendant, and the stock of the "Southern Railway Company in Kentucky" has continued to be held in the same manner since its organization.

At the time of the decretal sale of the properties of the Louisville Southern Railway Company, and at the time of the organization of and taking over of that property by the "Southern Railway Company in Kentucky," it acquired 769 cars of all kinds, and also 25 steam locomotives, which included its entire rolling stock; and since then whenever any such rolling stock became unfit for use for any cause it was supplied by the defendant, Southern Railway Company, at its own expense without any charge to the "Southern Railway Company in Kentucky." During all of the time the directors and officers of the two companies were the same individuals, but perhaps the "Southern Railway Company in Kentucky" did not have the number of directors that the defendant, Southern Railway Company, had, but the members of the directorate in the one company were also members of the directorate in the other. The receipts from the operation of the portion of the system operated in the name of the "Southern Railway Company in Kentucky" were and are sent directly to its treasurer in Washington, who is also the treasurer of the defendant company, since, as we have seen, each company has the same officers. The "Southern Railway Company in Kentucky" in making its reports to the Interstate Commerce Commission stated each year that it was merged in the defendant, Southern Railway Company, and the latter company made the same report and also stated in its annual reports to its

stockholders covering the very years involved here that it *owned* the "Southern Railway Company in Kentucky." At all of the stations in Kentucky, along the lines of the latter company, are large signs or bulletin boards at its depots advertising the line as "The Southern Railway System," and in all of the folders published and distributed by the defendant the trackage of the "Southern Railway Company in Kentucky" is shown to be a part of the Southern Railway system as much so as are any of the lines in Virginia or any other state in which it operates.

The same unifying facts are not shown with reference to the other three companies involved, viz.: The Cumberland Railroad Company, the Cumberland Railway Company and the Mobile and Ohio Railroad Company. In the latter company the defendant is shown to own a majority of the stock, and in this way it, in a sense, controls that company at least in the election of its directors and officers, many of whom are the same as those in the defendant company, but it is not shown that the earnings of that company are handled by the defendant to the extent and in the same manner as those of the "Southern Railway Company in Kentucky" are handled; nor does it appear that the defendant furnishes to that company its depleted rolling stock either with or without charge to it. Many of the acts indicating complete ownership found to exist with reference to the "Southern Railway Company in Kentucky" are not shown with reference to the operation of the Mobile & Ohio lines. The Cumberland Railroad Company is a Tennessee corporation, and has a different set of officers from the defendant, and while the latter may own a majority of its stock and control its policies, it is quite clear that there is not enough appearing in the record to destroy the separate identity of the two corporations, or to justify us in treating them as unified in a single operation. The same may be said with reference to the Cumberland Railway Company, which, however, operates only 1.74 miles of track, all of which is in Bell county, in this state.

We will therefore devote the remainder of this opinion to a determination of the question whether the line of railway which is ostensibly operated by the "Southern Railway Company in Kentucky" is and has been actually in legal contemplation owned and operated by the defend-

ant, Southern Railway Company, so as to make it amenable to the payment of taxes in Kentucky on its intangible property in proportion that the length of that line bears to the length of the entire lines operated by it.

It is earnestly insisted by counsel for defendant that neither its ownership of a majority or even all of the stock in the "Southern Railway Company in Kentucky," nor the maintenance by it of an office in this state for the purpose of soliciting and routing freight and passengers to their destination, constitutes "doing business" in this state so as to render it liable for the taxes sought to be imposed, and in support of the stock ownership contention we are referred to the cases of Commonwealth v. Muir, 170 Ky. 435; Calor Oil and Gas Co. v. Franzell, 128 Ky. 715; City of Louisville v. McAteer, 26 Ky. L. R. 425; Bell, Sheriff v. City of Louisville, 106 S. W. (Ky.) 86; Conley v. Mathieson Alkali Works, 190 U. S. 406, and Interstate Commerce Commission v. Stickney, 215 U. S. 98, and cases and authorities referred to therein; and in support of the latter contention with reference to the maintenance of the office for the solicitation of freight and passengers, the cases of Green v. C. B. & Q. Ry. Co., 205 U. S. 530, and Philadelphia and Reading Railroad Co. v. McKibben, 243 U. S. 264, are cited. Both propositions are sound in the abstract as the cases cited fully demonstrate, and as is also shown in the text of Fletcher's Cyclopedia of Corporations, vol. 9, pages 9985 and 10024, with numerous cases cited in the notes. Indeed, neither of the propositions is disputed by counsel for the Commonwealth, but the question involved here is not what constitutes "doing business," but rather who is it that is doing the business which is done by the "Southern Railway Company in Kentucky." If there were nothing else appearing in this case except what is contained in the two contentions just mentioned, there would be no difficulties in the way of affirming the judgments appealed from; but the problem before us is whether the facts as hereinbefore recited are sufficient, taken in connection with the ownership of the entire stock, to show that defendant is the real owner and operator, and of course the controller, of the railroad lines in Kentucky, which purport to be owned, operated and controlled by the "Southern Railway Company in Kentucky."

Statutes enacted pursuant to the authority conferred by the Constitution for the purpose of imposing a general ad valorem tax will be construed according to the rules for interpreting other statutes, *i. e.,* so as to carry out the intention of the legislature as gathered from the terms of the statute itself; and while a special tax statute will not be construed so as to include property not intended by the legislature, as was held in the case of City of Maysville v. Maysville Street Railway Co., 128 Ky. 682, nor will a statute imposing a corporation organization tax be given a retroactive effect, without authority in the statute to do so, so as to include corporations previously organized, as was held in the case of Crecelius v. Carrollton Savings and Loan Association, 167 Ky. 813; yet, "A statute imposing a tax upon a corporation will not be construed literally, if it is susceptible of any other reasonable construction, where a literal construction would enable the corporation to evade taxation, for statutes are always to be construed in accordance with the intention of the legislature, and it is not to be supposed that the legislature intends that taxation shall be evaded." Fletcher's Cyclopedia of Corporations, page 7929.

It is insisted that the tax sought to be collected can only be imposed upon corporations, companies or associations "exercising any special or exclusive privilege or franchise not allowed by law to natural persons," and that the defendant, as owner of the stock of the "Southern Railway Company in Kentucky," is exercising only the same privilege that a natural person may exercise. If, however, the facts are that in addition to the ownership of such stock the defendant is in reality performing a public service in Kentucky by exercising the franchises and privileges of a common carrier in the name of another as *agent only* and to whom the Commonwealth has granted such franchises and privileges, it would be doing something more than a natural person would be authorized to do, and the question again recurs whether the defendant is *in reality* operating the line of the "Southern Railway Company in Kentucky in the manner indicated. It has been a guiding rule of courts from time immemorial to regard the substance rather than the shadow, and to determine questions according to the actual facts rather than according to appearances.

In the case of Southern Pacific Terminal Co. v. Interstate Commerce Commission, et al., 219 U. S. 498, the question was presented to the Supreme Court of the United States as to the identity of the Southern Pacific Railway Company with the appellant company, which was a local one operating in the city of Galveston, Texas. The facts are stated in the opinion and which we will consume neither time nor space to restate in this opinion, except to say that among the facts appearing was that of stock ownership in the local company by the Southern Pacific Company. The Supreme Court, in holding the facts sufficient to show a complete identification of the companies, said: "In opposition to these views appellants urge the legal individuality of the different railroads and the terminal company and cite cases which establish, it is contended, that stock ownership simply or through a holding company does not identify them. We are not concerned to combat the proposition. The record does not present a case of stock ownership merely or of a holding company which was content to hold. It presents a case, as we have already said, of one actively managing and uniting the railroads and the terminal company into an organized system. And it is with the system that the law must deal, not with its elements. Such elements may, indeed, be regarded from some standpoints, as legal entities; may have, in a sense, separate corporate operation; but they are directed by the same paramount and combining power and made single by it. In all transactions it is treated as single."

A similar question was before the same court in the case of Chicago, Milwaukee & St Paul Railway Co. v. Minneapolis Civic and Commerce Association, 247 U. S. 490. In that case two trunk line railway companies, one of them designated in the opinion as the "Milwaukee Company" and the other as the "Omaha Company," owned and operated lines of railroad running into the cities of Minneapolis and St. Paul, Minnesota. They organized a local company known as the Minneapolis Eastern Railway Company which connected the termini of the two trunk lines in Minneapolis with the city of St. Paul and with certain milling interests therein. Under a contract with the three companies only 300 shares of the authorized capital stock of the local company were issued, and each of the trunk lines took 75 shares, and 5

were issued to qualifying directors of the local company, and 145 shares were issued to a trustee for the "Eastern" or local company; but the superintendent, having charge of the operation of the local company could not be appointed without the consent of the two trunk lines. There were other facts showing the completeness of the control of the local company by the two owners of the trunk lines. In the suit it was charged that the local company was in reality owned by the two trunk lines owners, and it was sought to control switching charges made by the local company for freight hauled from one city to the other and to its destination on the lines of the local company. After enumerating the facts, some of which we have not stated, the court said: "With the facts thus summarized, it is difficult to conceive of a plan for the control of a jointly owned company and for the operation of a jointly owned track more complete than this one is and it is sheer sophistry to argue that, because it is technically a separate legal entity, the Eastern Company is an independent public carrier, free in the conduct of its business from the control of the two companies which own it and therefore free to impose separate carying charges upon the public."

Other illustrative cases are Colonial Trust Co. v. Montello Brick Works, 172 Fed. 310, and Cutler v. Cutler-Hammer Manufacturing Co., 266 Fed. 388. In those cases, as well as in 26 R. C. L. 164, the rule is announced that whether a corporation is "doing business," so as to render it amenable to the local laws, is a question which "depends upon the facts of each particular case," and is necessarily not concluded by the mere fact of adopting a different name in which the particular business is transacted. The case of Peterson v. Chicago, Rock Island & Pacific Railway Co., 205 U. S. 364. strongly relied on, does not militate against that rule, since under the facts of that case it was determined that the companies involved were not identical or unified, but continued to maintain their separate existence and also the independent operation of their respective properties.

In the case of Southern Railway Company in Kentucky v. Thomas, 28 Ky. L. R. 951, the question of the identity of the same two companies here involved was before this court and many of the facts appearing in this case appeared also in that one, and the court said: "Taking all the

proof together, there was sufficient proof to warrant the jury in concluding that the Southern Railway in Kentucky is simply one of the divisions of the Southern Railway Company, and that although a different corporate name is used, it is the same thing as the Southern Railway Company, the name only being changed by adding the words 'in Kentucky.' In determining the liability of the corporation, the court will look at the substance, and not the mere form. (Davis, Admr. v. C. & O. R. R. Co., 25 Ky. Law Rep. 342.)''

In addition to the foregoing authorities, our attention has been called to the two English cases of Apthorpe v. Peter Schoenhofen Co., 79 Law Times Rep. (N. S.) 98, and St. Louis Breweries v. Apthorpe, 79 Law Times Rep. (N. S.) 551. In those two cases an imposed income tax was sought to be collected from an English corporation which transacted none of the business *in its name* from which the company derived the income sought to be taxed, but the business was conducted in America, in the one case by an American corporation located in Chicago, Illinois, and in the other case by a similar corporation located and operated in the city of St. Louis, Missouri; but the English corporation owned the stock of the two American companies, elected their directors and otherwise controlled their active management, and to all intents and purposes the English company was actually engaged in business in America, but *in the name* of the two American companies; and the courts held that the income was produced by business transacted *by* the English companies and sustained the tax. In the St. Louis Breweries case the court said: ''What one looks at is not the words, but the substance. Now, there being to my mind this perfectly satisfactory ground on which to base the decision in this case, I do not propose to discuss the question whether the English company can be said to be carrying on the business of the American company. All I would wish to observe is that in matters of this kind, especially in revenue matters, it seems to me that one ought to look at the substance, and not merely at matters of machinery and form; and there is a great deal to be said, I think, in favor of the larger view taken by the attorney general that, in effect and substantially, this English Company is, through the American company, doing the business they do.''

Another important fact that should not be overlooked is, that all of the cases in which the question was presented, including those relied on by defendant, the strongest of which perhaps is the Peterson case, *supra*, the court enters into a labored discussion and a detailed analysis of the facts in an effort to determine whether the different corporations involved were identical, or were in fact merged into one, when such discussion would be profitless and wholly unnecessary, if the mere fact of operating under a different name was determinative of the question. If separate nominal operation was alone decisive the labored discussion of the facts by the court in the respective cases was superfluous and mere idle indulgence. We can not believe that such discussions were perfunctory only, but rather are we convinced that the court in each case was endeavoring to find the *actual facts* and to determine the question *from them*, and that the effort to ascertain the decisive facts was a determination by implication that they, when found, should prevail and govern the ultimate decision of the question, regardless of the nominal operation.

In the light of the foregoing authorities, and many others which could be cited, and looking at the proposition from a logical and common sense standpoint, we cannot escape the conclusion that in each of the years involved defendant, Southern Railway Company, was the owner of and actually operated the lines of the "Southern Railway Company in Kentucky," not in its name but in that of the latter company, which latter fact was the shadow, but the actual operation was the substance. Defendant could not have more effectually operated these lines if it had done so in its own name. Every act looking to the control and management of them during the times mentioned was set in motion and actually executed by the same brains which conducted the operation of its admittedly owned lines, and the income from the Kentucky operation was sent to and presumably disbursed by the same officer who received and disbursed the income from the Southern Railway system proper. The defendant gave out to its stockholders and announced to the traveling public that it owned the lines of the "Southern Railway Company in Kentucky," and to allow it to escape taxation on its just proportion of its intangible property subject to taxation in Kentucky, because of the mere shell or hull in whose name it was oper-

ating its Kentucky division, would not only be surrendering the substance to the shadow, but would demand of us that we shut our eyes to the facts, and to thus permit one, whom the statute was intended to reach, to escape taxation through the disguise produced by the pigment of the Kentucky Corporation, and to thereby enjoy in this Commonwealth special privileges not allowed to individuals without contributing its just proportion to the burdens of government. This is a practical age in which we live and facts ·are regarded more than fiction, and courts recognize things as they are and not as they appear when clothed in a disguised garb. It is our conclusion, therefore, that the court should have assessed against defendant Kentucky's portion of its' intangible property assessed by the proportion of the mileage that the lines nominally operated by the "Southern Railway Company in Kentucky" bear to the entire mileage of defendant's system estimated according to the method provided by the statute.

But, it is insisted that this would result in taxing in Kentucky property having no situs here. A sufficient answer to this is that under the conclusions we have reached the result is the same as if the Kentucky division had been actually operated in the name of the defendant, the same as is the operation of the Illinois Central Railroad Company and other foreign common carriers who pay a similar tax under the same statute. The authorities are unanimous in holding that the intangible property subject to local taxation is not to be estimated alone according to the business done on that division of the railway system located within the taxing authority, but it is to be proportioned according to the business done over the entire system of which the local line or division is a part. Thus, in the case of Cleveland, etc. Ry. Co. v. Backus, 154 U. S. 439, it is said: "The true value of a line of railroad is something more that an aggregation of the values of separate parts of it, operated separately. It is the aggregate of those values plus that arising from a connected operation of the whole, and each part of the road contributes not merely the value arising from its independent operation, but its mileage proportion of that flowing from a continuous and connected operation of the whole. This is no denial of the mathematical proposition that the whole is equal to the sum of all its parts, because there is a value created by and resulting from the combined operation of all its parts

as one continuous line. This is something which does not exist, and cannot exist, until the combination is formed.'' See also Fletcher's Cyclopedia of Corporations. vol. 7, pages 8067-8078, both inclusive, and the following cases from this court: Baltimore & Ohio Southwestern R. R. Co. v. Commonwealth, 177 Ky. 566; Bosworth, Auditor v. Evansville & Bowling Green Packing Co., 178 Ky. 716; L. & N. R. R. Co. v. Commonwealth, 181 Ky. 193, and Bosworth v. Kentucky Highlands Railroad Co., 183 Ky. 749.

The Commonwealth in these cases recognizes the right of the defendant to credit the amount of taxes which may be assessed herein by the amount of taxes paid for the respective years on intangible property assessed by the ''Southern Railway Company in Kentucky'' which, according to our opinion, is all the relief growing out of that fact to which the defendant is entitled. And, of course, if Kentucky'e proportion of the estimated intangible property of the defendant is not equal to or greater than the amount of intangible property assessed and tax paid by the Kentucky company, no judgment can be rendered against the defendant in either of the cases; otherwise, the Commonwealth is entitled to have assessed the excess of the intangible property, if any.

The proceedings are in the nature of a common law action but to be tried by the court without the intervention of a jury. The lower court did not reach the point of making an estimation of the intangible property to be taxed in Kentucky, since, as we have seen, the statements were dismissed upon the ground that the defendant was not liable in any event. We therefore have a case in which there is no adjudication upon the amount of property to be assessed by the court having original jurisdiction of the subject matter. The litigants have but lightly discussed the question as to the amount of the estimation to be made, nor are we fully aware that the case when submitted was prepared with that point in view. We have, therefore, concluded to remand the case to the circuit court with directions that it proceed to ascertain the amount of intangible property which should be assessed for each of the years involved in Kentucky, according to the prevailing rule of law upon the subject.

Wherefore the judgment in each of the cases is reversed and remanded for proceedings not inconsistent with this opinion.