## Louisville & Nashville Railroad Company v. City of Frankfort et al.

(Decided June 16, 1931.)

ASHBY M. WARREN, C. S. LANDRUM, and MORRIS & JONES for appellant.

F. M. DAILEY for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON— Reversing.

The city of Frankfort is a city of the third class. Section 3450, Ky. Statutes, authorizes the common council of cities of the third class to provide by ordinance for the improvement of any public way or sidewalk by original or reconstruction, or by resurfacing upon a foundation already in place. The improvement may be made

> "at the exclusive cost of the owners of real estate abutting on such improvement, to be apportioned among and assessed upon the lots or parcels of real estate abutting on such improvement according to the number of front or abutting feet, and a tax shall be levied upon such lots or parcels of real estate for the payment of the cost assessed thereon . . . due and payable at the city treasurer's office upon completion of the work and acceptance thereof by the common council . . . unless otherwise provided in the ordinance ordering such improvement, and no property should be exempt from such improvement tax."

On May 12, 1930, the council of the city of Frankfort by ordinance, adopted in prusuance to this provision of the statute, provided for the paving with asphalt of Broadway street from Washington street to the old Louisville & Nashville Railroad bridge over the Kentucky river. The track of appellant occupies the center of Broadway a distance of about two city blocks from a point at the intersection of Broadway and Washington streets to the Kentucky river. A fill was constructed of cement for the purpose of accommodating the proper construction of its track, which is about 14 feet wide and begins with the level of the street at the intersection of Washington and Broadway, rising gradually until the elevation is about 12½ feet in height at the intersection of Wilkinson and Broadway, and from Wilkinson and Broadway it is from 12½ feet to about 19 feet in height

where it approaches the Kentucky river. There an abutment was built for the purpose of accommodating the bridge that spans the river. The track is constructed on this fill. The construction of the fill and the tracks on it are permanent. The street in the center of which it exists has an average width from curb to curb of 69 feet. The general average of the width of the street on the south side of the fill from curb to it, is 31 feet; on the north side it is 24 feet.

During the year 1930, the city council of Frankfort by ordinance which is conceded to comply in all respects with the provisions of section 3450 supra, and to have been duly and regularly adopted, undertook to improve Broadway street by a reconstruction thereof of a permanent type of street as set out in the ordinance, on both sides of the fill beginning on Broadway from the west side of Washington, running to Wilkinson, and from Wilkinson to the river. At the intersection of Broadway and Wilkinson, the appellant has constructed a trestle for the use of traffic on the street at the intersection of Broadway and Wilkinson. The city of Frankfort constructed this intersection. On November 10, 1930, the common council of the city by ordinance assessed and apportioned against appellant a part of the cost of the street construction from Washington street to the Kentucky river bridge. The appellant protested in writing against its action. The council disregarded its protest, and by ordinance assessed and apportioned against it a portion of cost of improvement of Broadway street from Washington to the old Louisville & Nashville bridge as follows:

| | | |
|---|---|---|
| Broadway street, South side, from Washington street to Wilkinson street | 416.5 ft. | $780.94 |
| Broadway street, North side, from Washington St. to Wilkinson Street | 416.6 ft. | 781.12 |
| Broadway street, North side from Wilkinson St. to old L. & N. R. R. Bride | 352.0 ft. | 704.00 |
| Broadway street, South side, from Wilkinson St. to the Old L. & N. R. R. Bridge | 196.0 ft. | 393.20 |
| Total assessed cost against Plaintiff | | $2,659.26 |

Subsequently by ordinance the city council levied a tax on the value of the track of appellant in the center of Broadway and declared a lien thereon to secure the payment of $2,659.26. Thereafter appellant instituted

this action in the Franklin circuit court challenging the authority of the city council in all respects in the adoption of the ordinance and the apportioning of the cost of the street construction and in the assessing, levying, and declaring a lien against its track situated in the center of the street. It sought to have same canceled and held for naught, and to obtain an injunction perpetually enjoining the city council and authorities from enforcing a lien against it and its property. After certain amendments were filed, the trial court sustained a demurrer to the petition as amended. The appellant declined to plead further, and elected to stand by its petition as amended. Whereupon judgment was entered dismissing its petition, to which it excepted and now prosecutes this appeal.

In 1832 the Lexington & Ohio Railroad Company was granted, by an act of the General Assembly of Kentucky, a franchise to lay its track and operate its trains on Broadway street. Later, the Louisville & Nashville Railroad company acquired the franchise rights of the Lexington & Ohio Railroad Company. The appellant therefore acquired its authority as successor of the Lexington & Ohio Railroad Company to exercise its rights to maintain its track and operate its trains over Broadway street.

It has maintained its track and operated its trains on Broadway street of the city of Frankfort with the consent of the city authorities of Frankfort for about three-quarters of a century. Sometime in the year 1928 a change in the location of its track on Broadway between Washington street and the old Louisville & Nashville bridge was made under an agreement between it and the city of Frankfort, by which it was granted permission to construct a railroad bridge over the Kentucky river within the limits of the city of Frankfort, and was granted by the city the right to change the direction of its use and occupancy of Broadway street from where its track was then located. The fill now existing in the street, and on which the track is located and upon which its trains are operated, was made in pursuance to this arrangement between it and the city of Frankfort. The appellees insist that the appellant's franchise is a perpetual one and that its occupancy of the street is absolute for its own use and for no other purpose, and that the strip of land on which its tracks are located "is assessable for the purpose of street improvements" under section 3450 supra, and the ordinance adopted by

the city council in pursuance thereto. To sustain their position they cite and rely upon Figg v. Louisville & N. R. R. Co., 116 Ky. 135, 75 S. W. 269, 25 Ky. Law Rep. 350; Louisville & N. R. R. Co. v. Barber Asphalt Paving Co., 116 Ky. 856, 76 S. W. 1097, 25 Ky. Law Rep. 1024; Louisville & N. Railroad Co. v. Southern Roads Co., 217 Ky. 575, 290 S. W. 320; Chesapeake & O. R. R. Co. v. City of Morehead, 223 Ky. 698, 4 S. W. (2d) 726; Vogt v. City of Oakdale, 166 Ky. 810, 179 S. W. 1037; City of Maysville v. Maysville St. Ry. & Transfer Co., 128 Ky. 673, 108 S. W. 960, 963, 32 Ky. Law Rep. 1366. To sustain the same rule may be cited Specht v. Barber Asphalt Paving Co., 80 S. W. 1106; Orth v. B. B. Park & Co., 117 Ky. 779, 79 S. W. 206, 80 S. W. 1108, 81 S. W. 251, 25 Ky. Law Rep. 1910, 26 Ky. Law Rep. 184, 342.

The rule deducible from the cases supra is that a strip of land appropriated to use by a railroad company as a right of way is a lot within the meaning of section 3450 supra, and is liable to assessment for street improvement, except the case of City of Maysville v. Maysville Street Ry. & Transfer Co. In those cases, with the exception noted, the lots or parcels of real estate were abutting the improvement. In the City of Maysville case the rule announced in the other cases cited by appellee was recognized by the court in this language: "There the railroads owned perpetual and exclusive rights of way over lots of land abutting on the improvement; and it was held that this perpetual and exclusive right of way constituted land to be assessed for making contiguous improvements, and that the remote possibility of reverter was an immaterial consideration. In other words, this was such ownership of lands contiguous to the improvement as to fall within the taxing district marked out by the statute."

In the Figg case this language is found:

"A strip of land appropriated to use by a railroad as a right of way, and which is a 'lot,' within the meaning of the statute governing street improvements, is liable to an assessment for a street improvement. . . . The use or nonuse, or the character of the use to which the parcel of land is put, does not determine the question whether it is or is not a lot. The strip of land used by the railroad company the day before it was appropriated by it as a right of way was a lot, in the meaning of the stat-

utes, and to thus appropriate it cannot change its character."

The paramount question here involved was not considered and determined in any of the cases cited, except in the Maysville case. In it the city authorities sought under the authority of section 3564 et seq., Ky. Statutes 1903, to levy a tax for street improvements against the right of way and franchise property and interest of the Maysville Street Railway & Transfer Company by reason of the existence of its track and use in the center of the street.

Section 3450, Ky. Statutes, provides that the cost of construction or reconstruction of a street

"shall be made at the exclusive cost of the owners of real estate abutting on such improvement, to be apportioned among and assessed upon the lots or parcels of real estate abutting on such improvement according to the number of front or abutting feet," etc.

The identical question involved here was involved in the case of City of Maysville v. Maysville Street Ry. & Transfer Co., supra, except there the assessment or levy sought to be enforced was against the street railway and transfer company. and here is it against a steam railroad company. In that case the track was in the center and level with the surface of the street, and here it is elevated and in the center of the street. It was our conclusion and so stated in City of Maysville v. Maysville Street Ry. & Transfer Co., supra, that while the general council is given the right only to assess the cost of improvement upon the abutting property owners, in the absence of an express provision of the statutes, it was without statutory authority to assess any portion of such cost upon a street railway track in the center of the street, as it was in no sense abutting property. The city of Maysville Case was decided in 1908 under section 3564 Ky. St. 1903. Section 3094 and 3096 et seq., Ky. Statutes, were originally identical in respect to this question to sections 3564 et seq., and they were amended by an act of the General Assembly which became a law in 1910 without approval of the Governor. See chapter 107, Acts 1910, page 306.

By this amendment it was provided: "When in any such city, having therein a street railway, the railway

company is required by law or by its franchise, or by any contract with the city, to pave or improve any part of the streets or alleys of the city, proposed to be improved, the cost of paving such portion of such streets or alleys shall be assessed against such railway company and a tax shall be levied upon all property, assets and franchises of such company in the city for the payment thereof.'' (Section 2.)

After this amendment, sections 3096 et seq. were before us in City of Newport v. Silva, 143 Ky. 704, 137 S. W. 546, and Id., 144 Ky. 450, 137 S. W. 546, 549. Again it was our conclusion that the track of a street railway in the street was in no sense abutting property within the meaning of the statutes, and that no right exists to assess any portion of the costs upon such a street railway track for the cost of street improvements, ''yet if there were legislative authority to assess any portion of the cost upon street railways, we see no reason why it may not be done; indeed, with few exceptions, the right to do so has been uniformly upheld.'' Kentucky Traction & Terminal Co. v. Carey-Reed Co., 188 Ky. 226, 221 S. W. 1078; Cicero & Proviso Street Ry. Co. v. City of Chicago, 176 Ill. 501, 52 N. E. 866; City of New Haven v. Fair Haven Ry. Co., 38 Conn. 422, 9 Am. Rep. 399. We held in that case that under the amendment to section 3096, Ky. Statutes, the city of Newport was clothed with authority to assess, levy, and collect of the street railway company taxes for the cost of improvement of the street because of its track in the street. The statute made its track abutting property within the purview of the statute as amended. We find in section 3450, Ky. Statutes, this language:

''The improvement of public ways and sidewalks (including curbing and guttering), except as hereinafter provided, shall be made at the exclusive cost of the owners of real estate abutting on such improvement, to be apportioned among and assessed upon the lots or parcels of real estate abutting on such improvements according to the number of front or abutting feet, and a tax shall be levied upon such lots or parcels of real estate for the payment of the cost assessed thereon. . . . When in any such city having therein a street railway, and the raildway company is required by it franchise, or by any contract with the city, to pave or improve

any part of the streets or alleys of the city, proposed to be improved, the cost of paving such portion of such streets or alleys shall be assessed against such railway company and a tax shall be levied upon all property, assets and franchises of such company in the city for the payment thereof. Such tax shall constitute a first lien upon all property, assets, and franchises of all kinds whatsoever of such company within the corporate limits of the city, and shall be due and payable at the same time and in the same manner, and shall bear like interest as the taxes assessed against the abutting property. Such railway company shall have the right to construct its own part of such proposed improvement, and if it shall do so, no tax shall be assessed against such company; provided, however, that such company shall before the letting of the contract for such improvement elect by written request presented to the common council or said board of commissioners, to construct its part of such improvement, and shall execute a bond to the city with good and sufficient surety, to be approved by the mayor. . . . The city may pay the cost of the improvement of intersections with other public ways, including one-half of the width of the street or alley being improved, opposite other streets or alleys which run into but do not cross the street or alley so being improved, and of that proportion of any street abutting upon property belonging to the city, or it may assess the cost thereof against the property abutting on the street or way or part thereof ordered improved. If any property abutting on the improvement be owned by any county, it shall pay in cash such portion of the tax as may be assessed against it, and the same right of action for the collection of such tax shall lie against the county as lies against any abutting owner.''

There is no provision of the statute, or language in this section, vesting the city council with authority to regard or class the track of a steam railroad company situated in the center of the street, whether it be above, below, or level with the surface of the street, as real estate abutting on such improvement. The assessing and levying of the cost of paying for street improvements must be done under statutory provision or requirements

in force at the time of the exercising of the power so to do by the city council. City of Maysville v. Davis et al., 166 Ky. 555, 179 S. W. 463; City of Newport v. Silva, supra.

In City of Maysville v. Maysville Street Ry. Co., supra, we stated the applicable law in such cases in this language:

"It is elementary that taxing laws will not be enlarged by intendment, and no property will be held as embraced within the terms of a taxing statute by mere implication. To impose taxes on property requires a clear and explicit command of the sovereign power; and the courts will never strain a taxing statute in order to make it embrace property which otherwise would not fall within its purview." Commonwealth v. Bingham's Adm'r, 188 Ky. 616, 223 S. W. 999; Commonwealth v. Sou. Ry. Co., 193 Ky. 474, 237 S. W. 11.

In City of Maysvilffile v. Davis, supra, we recognized the rule that the liability for costs of street improvements

"ordered by the governing authorities is determined by the statutes in force at the time, and arises from such statute, and there is no liability for the costs of such improvements except as created by the statute laws of the state."

Section 3450, Ky. Statutes, particularly designates as property liable for street improvements (a) lots or parcels of real estate abutting on such improvement; (b) a street railway; (c) property belonging to the city; and (d) abutting property owned by the county.

The express inclusion of these particular properties, without expressly including tracks of steam railroads, manifests an intention on the part of the General Assembly to exclude the tracks of steam railroads occupying the center of the street. Essex v. Carey, 1 A. K. Marsh. 60.

In the case of City of Maysville v. Maysville Street Ry. Co., supra, in discussing the statute there involved for the purpose of determining the meaning of the language used, we used this language:

"If appellee's franchise to operate a street car line in the middle of the street falls within the terms of the statute as being 'lots or parts of lots fronting

or abutting or bordering' on the improvement, then every telephone, telegraph, or electric line whose poles are set in the highway would equally fall within its meaning. And it would be difficult to give a reason why a franchise to operate a gas plant with gas pipes running under the street would not also come within the description of property to be taxed for the improvement, because all of these could as truly be said to front or abut or border on the improvement as does the street car line. . . . Taking the language of the statute in its natural and ordinary acceptation, we have no difficulty in reaching the conclusion that the property to be taxed for the improvement is the land on either side of the streets improved, and that the franchise to operate a street car line along the middle of the surface of the street is not embraced within the words 'lots or parts of lots fronting or abutting or bordering' upon the improvement. . . . If appellant's contention in this case is true, then the street itself is property belonging to the city which must be taxed as is the property of individuals, for certainly, if the street car franchise to operate over the street is property within the purview of the statute, the street itself, which belongs to the city, must also be property to be assessed for its own improvement.''

In Kentucky Traction & Terminal Co. v. Carey-Reed Co., supra, we expressly approved our holding that a street railway company track erected in the street is in no sense an abutting property owner. In that case the franchise of the traction company contained a provision requiring the grantee to maintain in good condition that portion of the street and street crossing on and over which it actually constructed its track. The fact the railroad track is above the surface of the street does not distinguish it from those cases supra, nor give the city any greater authority to regard it as abutting property within the meaning of section 3450, supra, than if it were level with or below the surface. It is within the street and not abutting property, whether it be level with, above, or below, the surface of the street. The Legislature in its wisdom has not seen proper expressly to include in section 3450, supra, the track of a steam railway in the street. It lawfully may have included a steam railway track in the street for the same purpose, but this

is not the question here. It has not expressly done so, and the courts are without authority to do that which the Legislature in its wisdom may lawfully do, but has not expressly done.

The right to declare and enforce liens on property for street improvement is purely statutory, and the authority for it, and the property against which it may be assessed, declared, and enforced must be found in the express language of the statute. Hightower v. Bailey, 108 Ky. 198, 56 S. W. 147, 22 Ky. Law Rep. 88, 49 L. R. A. 255, 94 Am. St. Rep. 350; Katz v. Scott, 229 Ky. 738, 17 S. W. (2d) 1024; Superior Elkhorn Coal Co. v. Allen, 238 Ky. 280, 37 S. W. (2d) 52. We are not authorized to extend the statute beyond its own language. The Legislature by proper proceeding may do so, we cannot. The right to such lien on the track of a steam railroad in the street, not being that type and character of property embraced by and within the language of the statute, the city cannot enforce it as against such railroad track.

Subsection 5 of section 768, Ky. Statutes, by virtue of which an arrangement between the appellant and the city of Frankfort was made, under which the elevation of the track of appellant was constructed and now operated, authorizes the board of council to impose on the appellant such terms and conditions governing the construction of the elevation and the appellant's liability for costs of street improvement. The record presents no arrangement authorized by this section entitling appellee to levy and collect of appellant the cost of the improvements. In its absence, viewing the language of section 3450 supra, in the light of the authorities supra, we are convinced that the city of Frankfort was without statutory authority to assess, levy, and collect $2,659.26, its apportioned cost of street improvement as against its property or any portion of it.

The judgment is reversed, and cause remanded for proceedings consistent with this opinion.