## City of Maysville, et al. v. Davis, et al.

## Same v. January & Wood Company.

(Decided November 5, 1915.)

## Appeals from Mason Circuit Court.

1. Municipal Corporations—Street Improvement.—Under the terms of the charter of cities of the fourth class, whether all or only a portion of the street, as to width, shall be improved, is a matter within the discretion of the board of council, which discretion may be corrected, if abused.

2. Municipal Corporations—Street Improvement—Ordinances.—When an ordinance for the original construction of a street, in a city of the fourth class, has been duly adopted, and the work has been done in substantial compliance with the terms of the ordinance, the abutting property will not be relieved from bearing the cost of the work on account of any error in the proceeding of the board of council, but the board of council or the court, in which a suit to enforce the liens is pending, will make all rules, corrections, and orders to do justice to all parties concerned.

3. Municipal Corporations—Street Improvement—Ordinances.—When an ordinance is adopted or a contract entered into for the construction of a street, in a city of the fourth class, it is done in contemplation of the provisions and requirements of the statutes in force at the time.

4. Municipal Corporations—Street Improvement.—The liability of abutting property for the costs of street improvements, ordered by the governing authority of a municipality, is determined by the statutes in force at the time, and arise from such statutes, as there is no liability for the costs of such improvements, except as created by the statute laws of the State.

5. Municipal Corporations—Street Construction—Abutting Owners.—The present statutes were intended to empower cities of the

fourth class to cause streets to be constructed at the cost of the abutting property, and to require such property to bear the costs of the construction, where they are benefited thereby, and to prevent the defeat of the enforcement of the liens for such costs, where the property is equitably entitled to bear a portion of the burden, on account of any mistake or error of the council in its proceedings.

6. Municipal Corporations—Street Construction—Abutting Owners.— The defense by the abutting property owner, to the effect that the work has not been done according to the contract, will not avail anything, when the work has been accepted by the city, as having been done according to the contract, and it is made the duty of the court trying the case to make such orders, and to correct such errors as will result in justice to all parties concerned.

7. Municipal Corporations—Street Construction.—In the absence of fraud or collusion, the acceptance by the council of the work, as having been done according to the contract, is conclusive upon the property owner.

JOHN M. CALHOUN for appellants.

WORTHINGTON, COCHRAN & BROWNING and J. P. HOBSON & SON for appellees.

OPINION OF THE COURT BY JUDGE HURT.—Reversing.

These consolidated suits involve very much the same questions for determination. The City of Maysville is a city of the fourth class, and in the year 1910, the common council determined upon the improvement of Second Street, by original construction, from the west property line of Wall Street to the west property line extended of E. B. Browning's property, and Market Street from the south margin of Second Street to the north margin of Third Street, by paving Second Street, within the limits above stated, with vitrified brick, and with cement curbs and gutters, on the ten year bond and paving plan, at the cost of the owners of the abutting property. According to the ordinance, which was duly adopted on the 23rd day of May, 1910, the paving of the street with vitrified brick was to extend from curb to curb. At the same time plans and specifications were adopted for the construction of the work, which were made a part of the ordinance. The ordinance was duly published and a committee appointed to conduct competitive bidding for the contract to do the work, and thereafter Kelly Brothers became the accepted bidders, and executed the required bond and

entered into a contract with the city and proceeded to do the work according to the plans and specifications. The tracks of the Maysville Street Railroad & Transfer Company are situated about the center of Second Street, and run longitudinally along said street for about two blocks, when it approaches the north side of the street and extends for about one half of a block alongside of the sidewalk, which was embraced within the proposed improvements. In the right of way contract between the Maysville Street Railroad & Transfer Company and the City of Maysville, which exists in the character of an ordinance of the city council, it was agreed between the street railroad and transfer company and the city that the tracks of the railroad are to conform to the grades of the street,'' as they are now fixed, or as they may be hereafter fixed by ordinance of the city, and the said company shall keep any portion of said street that it may use, occupy, or damage in the same good repair, in which the remaining part of said street may be kept by the city, free of any cost to the city, and any portion of said street, which may be torn up or injured by the construction of said road, shall be replaced in the same good condition in which they found it.'' After Kelly Brothers had commenced upon the construction of the street under contract made under the ordinance of May 23rd, they and the city engineer joined in reports to the city council, that in order to construct the street as required by the contract, it would be necessary to temporarily remove the tracks of the railroad company. The city requested the railroad company to remove its tracks, which it refused to do, and the representatives of the city then undertook to remove the tracks themselves. This resulted in the railroad company procuring an injunction against the city authorities, enjoining them from the removal of the tracks, and the city, within the time allowed, made a motion before a judge of this court to dissolve the injunction, which motion was overruled. Thereafter, on the 25th day of July, the council, by unanimous vote, adopted another ordinance, which provided that concrete ''headers'' four inches in thickness and twenty-two inches in length should be set fourteen inches from the tracks of the railroad, and on each side of it throughout the length of the portion of the street which Kelly Brothers, under their contract, had undertaken to improve. This ordinance was never published. It provided for the making of a contract for the

construction of the concrete "headers" between representatives of the city and the contractors, but did not provide that the contract to put in the "headers" should be let to competitive bidding. Neither did the ordinance provide for a failure to improve the street with vitrified brick between the "headers" and along the track and on each side of the track of the railroad. That seems to have been arrived at by a parol agreement between Kelly Brothers, who obtained the contract to put in the "headers," and the city council. Anyhow, Kelly Brothers proceeded to construct the street, leaving a space of three and one-half feet from the center of the railroad track and on each side of the center and extending out to the concrete "headers," unimproved in any way. When the appellees realized that the portion of the street occupied by the railroad track and fourteen inches on each side of it was not to be constructed as provided in the ordinance of May 23rd, they filed with the city council a protest against constructing the street in that way, and accompanied it with an offer to pay their pro rata portions of the cost of constructing the street along and on the railroad track as the other portions of the street. The council taking no heed to their protest, the appellees then served notice upon the city and upon the contractors that they would not consider themselves nor their property bound for the cost of construction of the street after it was carried out with a failure to construct the street upon and along the railroad tracks as the remainder of it was constructed. No heed was given to this. The contractors proceeded to construct the street with vitrified brick, out to the railroad track and upon each side of it, but fourteen inches from the rails they put in the concrete "headers," which, as contended by the appellees, left seven feet in the center of the street, through two blocks of the improved portion of it, entirely unimproved as required by the ordinance of May 23rd, and for one-half a block unimproved for the width of seven feet from the north curb on the side of the street where the railroad track was situated. The work was accepted by the city council, and a report by the city engineer and paving committee apportioning the cost of construction of the street and the concrete "headers," between the abutting property owners on each side of the street, was adopted by the council. The city then proceeded to issue bonds for the unpaid portions of the assessment and to

offer them for sale by advertisement, when the appellees instituted a suit against the city, in which they sought to restrain the city from the sale of the bonds. No immediate injunction was obtained, and the bonds, after the filing of the suit, were sold to the contractors, Kelly Brothers, through the agency of a certain bank in Maysville.

After the first installment of the bonds became due, the city instituted a suit against the January & Wood Co., one of the abutting property owners, to recover from it the amount of the assessment of the cost of the street and "headers" apportioned to it, and to enforce a lien upon its property to satisfy the payment of the assessment apportioned to it. Defense was made to both suits, and a statement of facts agreed upon, which was filed, after the two cases had been consolidated, and it resulted in a judgment of the circuit court in the first named suit, which recited that as the bonds had been already sold, the city was restrained from attempting to collect the assessment apportioned for the cost of the work, or to enforce any lien which might exist upon the abutting property to secure the payment of the assessments. The petition in the second stated case was dismissed. The city excepted to the judgment in each case and prayed an appeal to this court, which was granted.

It should be stated that nothing was included in the assessments for the cost of constructing the street, according to the ordinance, in the vacant space left along and on each side of the railroad track, but the contract price for putting in the concrete headers, and which amounted to about $1,525.00, was included in the assessments and was a part of the amount for which the city issued and sold its bonds.

Paragraph seven of the original plans or specifications for the work was to the effect that if the engineer and council should deem it best, they might make alterations or modifications of the plans or specifications for the work, and the price to be paid for the work as altered or modified, to be agreed upon in writing and signed by the contractor and some one authorized by the council on behalf of the city.

The ordinance adopted on the 25th day of July, on its face, purported to be an amendment to the original specifications, which were a part of the ordinance of May 23rd, and provided that any provisions of the original

specifications, as were in conflict with the provisions of the amendment, should be repealed.

When the street had been constructed as above stated, some one, presumably the Street Railroad & Transfer Company, the agreed state of facts does not show whom, filled up the space between the concrete "headers" with dirt and broken stone, and that since that time the travel upon the street has cut that space into ruts, and mud would scatter from it upon the remainder of the street, causing it to be unsatisfactory for travel and the use of the street.

The appellees, in their suit, contend:

First: That the city had no power to improve a street by original construction, except to the entire width of the street.

Second: That under the ordinance of the 23rd day of May, 1910, the street was to be improved with vitrified brick, from curb to curb, and that same had not been done.

Third: That the ordinance amendatory of the specifications, of date July 25, was void because of its want of publication, as required by the statutes. ·

Fourth: The amendatory ordinance of July 25th did not provide that the seven foot strip through the street, which is occupied by the railroad tracks, should not be improved, as required by the original contract and specifications, but it only provided that the concrete "headers" should be put in on each side fourteen inches from the railroad tracks, and for these various reasons, the contract under the ordinance had never been complied with, and that they were for that reason not bound for the assessments.

The appellant contends that the amendatory ordinance of July 25th did not require publication, under the statute, to make it valid, and that the change in the plans for construction of the street was such as was entirely reasonable and beneficial to the abutting property owners, and were such as the city had a right to make under the contract with the contractors, and that the abutting property owners are bound for the assessments, and which are a lien upon the property.

First: We will consider the contention of the appellees in the order stated above. Has the council of a city of the fourth class authority to provide for the original construction of a street, at the cost of the abutting property owners, except it improve the street to its entire width?

The statutes relating to cities of the fourth class are silent upon the subject. Section 3572, Ky. Statutes, expressly provides that a portion of the length of a street may be improved by original construction, without an undertaking to improve the entire length of the street. The case of Town of Bowling Green v. Hobson, 3 B. M., 478, relied upon by appellees as sustaining their contention, can not have any application to the power of the city council, under the present charter of cities of the fourth class, for the improvement of the streets. That opinion was based upon a provision of the charter of the named city, which authorized its trustees to cause a street to be improved, upon the petition of a majority of the property holders upon the street, and this court correctly held that it required a majority of the persons owning property upon the entire street, as to length, and not a majority of the owners upon a certain section of the street. It is apparent that a rule requiring the entire width of a street to be improved, or else to withhold the authority to improve any portion of it, under the varying conditions, as to width of streets, and the nature of their surface, and the necessity and desirability of their improvement to their entire width, in all cases, would be a harsh and unreasonable construction of the statutes, and would greatly militate against proceedings to make useful and necessary improvements, and would often times impose unnecessary burdens upon the abutting property owners. For these reasons, and in the light of the provision, which is embraced in Section 3567, of Ky. Statutes, which directs the council and the courts to "make all corrections, rules, and orders to do justice to all parties concerned," it seems that the better rule is to leave the question, as to whether all or a portion of the width of the street shall be improved, to the sound discretion of the board of council of the city, which discretion may be corrected, if abused.

Second: Under the ordinance of May 23rd, 1910, the street was to be made of vitrified brick from curb to curb, and same has not been done, for the space of seven feet, which is occupied by the tracks of the street railroad. The portion of the street not occupied by the tracks of the railroad was improved, as provided for by the ordinance and contract. There is no attempt made to show that the improvement of the street, to the extent to which it was done, was not in accordance with the contract and

not in accordance with the ordinance, except as to the concrete "headers," or that it was not a substantial and valuable work and beneficial to the abutting properties. The plans and specifications for the improvement, which were duly adopted as a part of the ordinance of May 23rd, 1910, provided in Section 7, that "the engineer and council may, if they deem best, make alterations or modifications of the specification or plans for this work. The price to be paid for this work under such altered or modified specifications to be agreed upon in writing and signed by the contractor and some one authorized by the council on behalf of the City of Maysville.

"And it is expressly agreed that such alterations shall not annul or violate this contract," etc.   *   *   *   "Such additional work, alterations or modifications shall be upon and subject to all the provisions of the original contract."

The contract entered into for the performance of the work provided, "that the power reserved to, or conferred upon any body or person in the said specifications, plans and profiles may be exercised by said body or person; and expressly covenant that the agreement as to amount to be added or deducted from the contract price for any omission, addition or alteration shall be final, &c."

The ordinance of May 23rd, 1910, of which the plans and specifications were a part, was regularly adopted and published, as required by law. The plans and specifications provided that alterations and modifications of same could be made by the engineer and council, and the original contract provided, that such engineer and council could make alterations and modifications. Section 2, of the plans and specifications, provided, that the words, "Council and Engineer" shall mean the council or its committee, and the engineer or his duly authorized agent. It thus appears, that in accordance with the ordinance of May 23rd, 1910, and in the contract entered into under it, the council had the right to make alterations in and modifications of the plans and specifications of the work, or that same could be done by the engineer and paving committee. If done by the council, it must have been necessarily done at a meeting of it, by ordinance, but if done by the engineer and paving committee, it was valid without a resolution or ordinance of the council, if thereafter approved by the council.

Third: The council undertook by the amendatory ordinance of July 25th, 1910, to alter and modify the plans and specifications by providing for the placing of the concrete "headers" upon each side of the railroad track, and a contract was entered into by the mayor with the contractors, under authority from the council to pay for the "headers." The action of the council, as far as the resolution of July 25th, may be considered an ordinance, was void and ineffective, as it was never published. Sections 3487 and Section 3567, which are a part of the charter of cities of the fourth class, provide for the manner of the adoption of ordinances, and when they shall become enforcible. The terms of these statutes construed together make it plain, that no ordinance for the original construction of a street can be valid without publication, as provided in Section 3487, *supra*. C. & O. Ry. Co. v. Mullins, 94 Ky., 355; Fox v. Middlesborough, 96 Ky., 262; City of Newport v. N. N. Bank, 148 Ky., 213; Muir v. Bardstown, 120 Ky., 739.

Fourth: It is true, that the amendatory ordinance of July 25th does not provide for leaving the seven foot strip occupied by the railroad tracks, unimproved. The work was, however, being done under the supervision of the engineer and paving committee, who certified to the council that the work had been completed according to the contract, and in accordance with the ordinance as adopted and published by the council. The report of the engineer and paving committee showed that the part of the street which was occupied by the street car tracks was left unimproved, and nothing for the costs of improving same was apportioned to any of the abutting property owners. This report and apportionment of costs was adopted and approved by the council. We must presume, that the contractors failed to improve the portion of the streets occupied by the railroad tracks, because the city was unable to procure the temporary removal of the tracks, in order to enable the contractors to perform their contract, and the seven foot strip was left unimproved by the direction of the engineer and paving committee, and with the full concurrence of the council. When the engineer and paving committee exercised the authority vested in them by the ordinance and contract to change the plans and specifications, by directing that the portion of the street occupied by the car tracks be left unpaved with vitrified brick, it cannot be said that the

leaving of such space unpaved was not in accordance with the contract and ordinance. It does not appear that the contractors sought to be relieved from the paving of the strip.

The modification of the plans and specifications, which left unpaved the portion of the street, which was occupied by the railroad tracks, was not a captious and unreasonable exercise of discretion by the council, because it was unable to have the tracks temporarily removed for the purpose of doing the work, and failed in its effort, theretofore, to compel the railroad to bear any portion of the costs of improving the streets, as an owner of abutting property, as appears from the opinion of this court in City of Maysville v. Maysville Street Ry. & Transfer Co., 128 Ky., 673. From the portion of the contract, under which the railroad and transfer company occupies the streets of the city, which is embraced in the agreed statement of facts, it appears that the railroad and transfer company is obligated to keep the portion of the street which it uses in the same good repair in which the remaining part of the street may be kept by the city. The council should require the railroad company to comply with its obligation, rather than to lay the burden of paving the portion of the streets occupied by the railroad tracks upon the abutting property owners.

Conceding the invalidity of the amendatory ordinance of July 25th, 1910, and that the original ordinance and contract provided for the paving of the street from curb to curb, with the right of the council and engineer, or the street paving committee and engineer to alter and modify the plans and specifications, and the making of a subsequent contract to cover the alterations and modifications, has the city now a right to recover from the abutting property owners the assessment made upon them to pay for the improvement? It has been held in a long line of adjudications, that the power to require an abutting property owner to pay the costs of street improvements, is derived from the statutes which govern the subject, and until recently it was held in this jurisdiction, that to enable a city council to enforce the collection of an assessment for street improvements, it must have, as a condition precedent, proceeded in absolute conformity to the statutes giving it power for such purpose, to cause the improvement to be made and to levy the assessment; that the work to be done must have been ascertained and pre-

scribed in the ordinance; and that the councils of the cities had no power to accept a part performance of a contract and to subject the abutting property owners to the payment for the work performed. Henderson v. Lambert, 14 Bush, 24; City of Lexington v. Wally, 109 S. W., 299; Hydes & Goose v. Joyes, 4 Bush, 466; Murphy v. Louisville, 9 Bush, 189; Murphy v. Tucker, 10 Bush, 241. It remains, true, that the liability of the abutting property owner for street improvements depends and is derived from the statute laws of the State, and there is no liability, except where created by statutes, but the liability of the property owner is determined by the statute in force at the time the improvement of the street is made. Since the rendition of the above opinions, in the charter of cities of the fourth class, with reference to the lien upon the abutting property for the cost of construction and reconstruction of streets, in Section 3567, it has been provided as follows:

"And payment may be enforced upon the property bound therefor by suit in equity, and no error in the proceeding of the board of council shall exempt from payment or defeat said lien after the work has been done as required by ordinance; but the board of council or the courts in which said suits may be pending shall make all corrections, rules, and orders, to do justice to all parties concerned; and if such improvement be made as required by ordinance, in no event shall the city be liable therefor, without the right to enforce it against the property receiving the benefit thereof."

Section 3573 provides as follows:

"When the work is undertaken under the provision of Section 3572, and is completed in accordance with the contract, the work shall be received by said city council upon receipt of a certificate from the city engineer and committee on streets, stating that the work has been done according to contract, and said city engineer shall apportion the cost of said improvement against the lots or grounds abutting or bordering the improvement, etc."
*   *   *

Since the enactment of the present provisions of the charters of cities of the fourth class, when an ordinance is enacted or a contract entered into for the construction of a street, in a city of that class, it is done in contemplation of the provisions and requirements of the statutes, *supra,* and other provisions of the charter. Since that

time a different rule has been held as regards ordinances and contracts for street improvements. The legislative authority has, by statutes, changed the rule adhered to in cases before the adoption of these statutes.

Section 3576, Ky. Statutes, provides that liens upon the property for street improvements shall not be defeated or postponed by any judicial sale, or by any mistake in the description of the property, or in the name or names of the owners thereof. The present statutes seem to have intended to empower the cities of the fourth class to cause streets to be constructed at the cost of the abutting property, and to require such property to bear the costs of such construction, where they are benefited thereby, and to prevent the defeat of the enforcement of the liens for such costs, where such property is equitably entitled to bear a portion of the burdens, on account of any mistake or error of the council in its proceedings. In the case at bar, if the ordinance had provided, at the first, for the paving of the street, except the portion occupied by the tracks of the railroad, and the setting of the concrete "headers," as was done by contract after the original contract had been made and changed, at the cost of the abutting property, no valid objection could have been made by the owners of the property. The property received the benefits of the improvement to the extent it was made, and it seems is equitably entitled to bear the cost of it. The defense, that the work was not done according to the contract, will not defeat the lien, for two reasons, one of which as it appears to have been in accordance with the contract, and the other is that the city accepted the work as having been done in accordance with the contract and it is made the duty of the court trying the case to make such orders and to correct such errors, as will result in justice to all parties concerned.

In the absence of fraud or collusion between the council and the contractors, the acceptance of the work by the council, as having been done in accordance with the ordinance and contract, is conclusive upon the property owner. Joyes, &c. v. Shadburn, 11 R., 892; Creekmore v. Central Construction Co., 163 S. W., 194; Nevin v. Roach, 86 Ky., 494, 55 S. W., 546; Lovelace v. Little, 147 Ky., 137, 143 S. W., 1031. There is no charge of fraud or collusion upon the part of any one, in the case at bar.

Gleason v. Barret, 106 Ky., 125; Orth v. Park, 117 Ky., 779; Lindenberger Land Co. v. Park, 27 R., 437,

were cases construing a section of the charters of cities of the first class, and Lindsay v. Brawner, 29 R., 1240, construed a provision in the charter of cities of the third class, both of which are similar to the provision cited in Section 3567, of cities of the fourth class, and the conclusion arrived at in those opinions supports the conclusion arrived at here.

In the Lindenberger Land Co. v. Park, *supra*, this court said:

"The former rule existing under previous statutes on this subject has been modified so as to allow a just and reasonable execution of the work. Technical objections, formerly interposed to defeat wholly the claim of the contractor, who had done the work, are now made to yield by the more just provision of the statute, that the court may adjust the rights of the parties, after the completion and acceptance of the work, if there is some variance, yet is a substantial compliance with the ordinance and contract."

There is no reason why the same rule should not apply to contracts for street improvements in cities of the fourth class.

As the authorities of the appellant, city, were proceeding within the terms of the ordinance and contract, it is immaterial whether the property owners protested against the manner of doing the work or not.

The appellees have no valid claim for relief on account of the putting in of the concrete "headers," as in the discretion of the authorities, they were necessary and a proper thing to be done, and did not add to the burdens of the abutting property, since it was relieved from the payment of the costs of improving the portion of the street which was occupied by the railroad tracks, and which cost was largely more than the costs of the "headers," which were necessarily put in, when the city authorities were not able to secure a temporary removal of the tracks, so as to enable the street to be constructed and determined not to pave that portion of the street which was occupied by the railroad tracks. Lindsay v. Brawner, *supra;* Orth v. Park, 25 R., 1910; Barber Asphalt Co. v. Garr, 24 R., 2233; Schuster v. Barber Asphalt Co., 24 R., 2346.

It is, therefore, ordered that the judgments appealed from be reversed, and this cause is remanded for proceedings consistent with this opinion.