## Louisville & Nashville Railroad Company v. Southern Roads Company.

(Decided January 14, 1927.)

### Appeal from Hopkins Circuit Court.

1. Municipal Corporations—Contractor May Sue Abutting Owners for Street Assessment Without Joining City (Kentucky Statutes, Section 3574, Civil Code, Section 18).—Contractor, constructing street improvement, was empowered to sue abutting property owners for assessment under Kentucky Statutes, section 3574, without joining city, in proceeding in rem to enforce lien, in view of Civil Code provision (section 18) that suits shall be brought in name of real party in interest.

2. Corporations—Contracting Company, Qualifying to do Business Within State After Bid was Accepted But Before Contract was Made for Street Improvement, May Sue to Enforce Lien (Kentucky Statutes, Section 571).—Contracting company, constructing street improvement, may enforce lien against abutting property owners, though it was not qualified to do business in state under Kentucky Statutes, section 571, when bid was accepted, where it qualified before contract was made.

3. Municipal Corporations—Advertisements for Bids for Street Improvement Held Not Insufficient for Failure to Name Streets.—Advertisement for bids for street improvement held not insufficient for failure to name streets to be improved, where it stated that work should be done according to plans and specifications filed with city engineer.

4. Municipal Corporations—City Held Not Precluded from Improving Street, Not Constructed or Accepted by it as Part of State Highway (Kentucky Statutes, Sections 4356t-1, 4356t-11).—Duty of state under Kentucky Statutes, section 4356t-11, to maintain state highway, held not applicable to city street, and city was not precluded from constructing improvement at expense of abutting owners by section 4356t-1, where street was not constructed or accepted by state.

5. Municipal Corporations—Acceptance of Street as State Highway is Not Implied Because State Highway Joins it at Each End.—Law implies no acceptance of street as state highway merely be-

cause state highway joins it at both ends, where street did not
meet requirements of state road.

6.  Municipal Corporations—Contract for Street Improvement Held
    Not Void Because of Changes After Bids Were Opened, where City
    Accepted Work (Kentucky Statutes, Sections 3567, 3573, 3576).—
    Changes in street improvement after bids were opened, so that
    contract was different from work authorized, did not render con-
    tract void, where it was specifically provided, in plans and speci-
    fications made part of ordinance, that city could increase or de-
    crease quantity of work, and city accepted work as having been
    performed in accordance with contract, and apportioned cost to.
    abutting owners, in view of Kentucky Statutes, section 3567, 3573,
    3576.

7.  Constitutional Law—Determination that Railroad Property was
    Benefited by Street Improvement Held Not to Deny Due Process or
    Equal Protection of Law (Constitution U. S. Amendment 14).—
    Determination that railroad property was benefited by street im-
    provement held not to deny due process or equal protection of law
    under Constitution U. S. Amendment 14, where such determination
    was not wholly arbitrary, unwarranted, and flagrant abuse of
    power.

8.  Constitutional Law—Legislative Determination that Lands Will
    be Benefited by Local Improvement is Conclusive on Landowners
    and Courts, if Not Wholly Arbitrary.—Legislative determination
    as to what lands will be benefited by local improvement is con-
    clusive on owners and courts, and cannot be assailed under Con-
    stitution U. S. Amendment 14, except where arbitrary, wholly un-
    warranted and flagrant abuse of power.

9.  Constitutional Law—Assessing Street Improvement Under Front
    Foot Rule, where Depth of Property Varied, Held Not Denial of
    Due Process or Equal Protection of Law (Constitution U. S.
    Amendment 14).—Determination that asssesment for street im-
    provement should be based on front foot rule held not denial of
    due process or equal protection of law under Constitution U. S.
    Amendment 14, to railroad company, notwithstanding variance in
    depth of its property compared with other owners.

10. Municipal Corporations—Apportionment of Expense of Street Im-
    provement Will be Upheld if Not Discriminatory.—Apportionment
    of cost of street improvement against abutting owners will be up-
    held, if no substantial discrimination is worked.

WOODWARD, WARFIELD & HOBSON and C. J. WADDILL for
appellant.

CHAS. G. FRANKLIN and WM. FURLONG for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirm-
ing.

This is an appeal from a judgment of the Hopkins
circuit court in favor of the appellee, assessing a street

improvement lien against the appellant's right of way for $18,932.50, together with interest and penalties thereon, for the improvement of Railroad street, Earlington, Kentucky. A demurrer having been sustained to each of the various paragraphs of the answer of the appellant, which was the defendant below, and the appellant having declined to plead further, judgment was rendered for the assessed cost of the street improvement, with interest and penalties, and a lien therefor was declared on the right of way of the appellant abutting the street improved. The question whether or not this lien was superior to the mortgage liens existing against this right of way was reserved until the mortgagees could be made parties to this suit, and they had asserted whatever claim they had in opposition to the claimed superiority of appellee's lien, and hence that question is not before us. Excepting this question, this appeal involves the sufficiency of the appellant's answer.

From the pleadings it appears that in the year 1922 the city of Earlington, a city of the fourth class, started proceedings as required by the statute, looking to the improvement of several of its streets. On July 5, 1922, the council duly passed the resolution of necessity for these improvements as required by section 3570 of the Kentucky Statutes, and this resolution was thereafter duly published. On October 9, 1922, which was more than 30 days after the passage of the resolution of necessity, the ordinance providing for the improvements mentioned in the resolution of necessity had its first reading in the council, and on November 13, 1922, its second reading. On the last named date this ordinance was passed, and it was thereafter duly published on November 16, 1922. Thus we see that the requirements of section 3563 of the statutes, governing the passage of such ordinances, were duly complied with.

By section 2 of this ordinance it was provided that the improvements contemplated should be constructed in accordance with the plans and specifications which had been prepared for the same by R. C. Giffin, and which were then on file, and which were made a part of the ordinance by reference, the same as if copied at length therein. Section 4 provided for the advertisement for bids for the work to be delivered to the mayor not later than the 4th of December, 1922. Thereafter there was published for the requisite length of time an advertise-

ment to the effect that sealed proposals for the draining and paving of certain streets in the city of Earlington would be received up to December 18, 1922. The advertisement set out the estimated quantities of work to be done, and it recited that the plans and specifications for the work were on file with R. C. Giffin, the city's engineer. These plans and specifications set out the streets to be improved. No bids were received or opened on December 4th, but they were received up to December 18th, when they were opened. The plans and specifications called for bidding on the unit basis, and all the bids received were on that basis.

When the bids were opened, it was discovered that the appellee had made the lowest and best bid on the unit basis, but the council, being of opinion that a part of the work called for by the resolution of necessity and the improvement ordinance was unnecessary to be done at this time, decided to eliminate certain guttering, curbstones, certain streets entirely, and a part of Railroad street. It also decided not to improve the streets which were to be improved to their full width, but only to the extent of 25 feet thereof. The appellee consented to these changes, and its bid to do the work was accepted. On December 21, 1922, the council passed an ordinance amendatory in its nature, and providing for these changes which had been agreed upon. In the following March a formal contract was duly entered into between the city and the appellee for the improvements provided for by the ordinance of the preceding November with the changes herein mentioned, and thereupon the appellee constructed the improvements as thus changed and as called for by the plans and specifications. This work was thereafter accepted by the city and an ordinance apportioning the cost thereof was duly adopted by the city and published.

The appellant presented its several defenses in different paragraphs of its answer. Considering these defenses, though not in the order as presented, we find that it is first contended that the appellee as contractor could not constitutionally be empowered to sue alone and without joining the city for a street assessment against the abutting property owners, since there is no relationship existing between the contractor and such owner which justified the Legislature in permitting the contractor alone to sue the abutting property owner. The contrary

was impliedly held in Peters v. Horn, 209 Ky. 688, 273 S. W. 519, which sustained the right of a contractor to sue in his own name under Kentucky Statutes, section 3574, being the section under which the present suit is being prosecuted, for the penalties therein authorized. While the constitutionality of the section was not discussed, the right to maintain the action in the contractor's name alone could not have been upheld if the section was unconstitutional in so far as it authorized such right. However, but slight reflection should convince one of the soundness of that position. This is not a suit *in personam* against appellant. Indeed, as pointed out in City of Mt. Sterling v. Montgomery County, 152 Ky. 637, 153 S. W. 952, 44 L. R. A. (N. S.) 57, the statutes governing cities of the fourth class do not authorize a personal judgment for the cost of improvements as here involved; the sole remedy being against the property itself. The petition in this case did not seek a personal judgment nor did the judgment so provide. Our Civil Code (section 18) provides that all suits shall be brought in the name of the real party in interest, and, as cities of the class here involved have the power to create liens against abutting property in favor of contractors who have benefited that property by street improvements, the right to enforce that lien by a proceeding *in rem* may undoubtedly be vested in him to whom the lien belongs. There is, then, no merit in this contention of appellant.

It is next contended that, inasmuch as, at the time the bids were opened in December and appellee's bid was accepted, it had not qualified to do business in this state as required by section 571 of the statutes, it may not now maintain this action. See Oliver Co. v. Louisville Realty Co., 156 Ky. 628, 161 S. W. 570, 51 L. R. A. (N. S.) 293, Ann. Cas. 1915C 565. It appears from the pleadings, however, that the appellee did qualify as required by the aforesaid section of the statutes in January following The contract under which this work was done and out of which arises whatever rights appellee now has as against the property of the appellant was not entered into until the following March, at which time the appellee was fully authorized to do business within this state. The rule laid down in the Oliver Realty Company case is highly penal, and, even if followed should not be extended beyond its strict letter. It does not mean that a corporation which has failed to comply with section 571 of the statutes

shall be outlawed forever after. At least where the corporation does comply with the statute, its transactions which thereafter occur do not come within the rule of the Oliver Realty Company case. The rights here asserted arise under the contract of March 5th, and, as the appellee was then authorized to do business, it has full power to maintain this action.

It is next contended that the advertisement for bids as published was insufficient, because it failed to name the streets which were to be improved. The advertisement, however, stated that the work was to be done in accordance with the plans and specifications on file with the city engineer. These plans and specifications set out the streets which were to be improved. We are of opinion that under such circumstances the advertisement was sufficient.

It is next contended that Railroad street in question is and was at all the times involved in this controversy a necessary part of state highway project No. 2, known as the Dixie Bee Line, and that its improvement was ordered pursuant to an arrangement between the city and the state highway commission, which had for its object the improvement of the street, not as a street, but as a state highway, for which reason, under Kentucky Statutes, section 4356t-1, et seq., the city was without power thereafter to construct it at the cost of the abutting property owner; it being the duty of the state highway commission to construct and pay for it. The appellant admits that in the case of Shaver v. Rice, 209 Ky. 467, 273 S. W. 48, it was held that the Highway Act did not prevent the city of this class from constructing at the cost of the abutting property owners its streets though a part of some state highway project, at least until such time as the streets had been accepted by the state highway commission under the provisions of the road law as a part of the state highway system. It is contended, however, that, under the allegations of this answer and section 11 of the road act, being Kentucky Statutes, section 4356t-11, which provides that the state shall be considered as having accepted the road when it becomes a necessary part of any road leading out from any of the points designated in the statutes under highway projects, and that thereafter it shall be the duty of the state to maintain such road, that the city thereafter has no right to construct the street at the cost of the abut-

ting property owner; the duty to maintain it being in the state. It is urged that the effect of section 11 of the act was not considered or decided in the Shaver case, *supra.* We need not, however, inquire into the soundness of appellant's contention in this regard, because this same section 11 also provides that the state shall not be required to maintain any of the primary roads designated in the act until such road has first been constructed by the state as herein provided, or until such road has been accepted by the state as meeting the requirements of a state road. Not only is there no allegation in the answer here that either one of these requirements of the statutes has been complied with, but the averments of the answer clearly show the contrary.

While the answer does say that the state had accepted Railroad street as a state highway, it also explains that this acceptance must be considered as having taken place because the state had constructed the Dixie Bee Line northward from the northern terminus of this street and southwardly from its southern terminus, and had arranged with the city to have the street reconstructed so as to form the connecting link. It thus appears positively that the only acceptance which appellant relies upon is that which the law may imply from these acts specially pleaded. But the law implies no such acceptance, since it is clear that the street, as it was before reconstruction, did not meet the requirements of a state road, else there would have been no need for its reconstruction. The state was demanding its reconstruction by the city to meet such requirements. It is not contended that this street had ever been constructed by the state as provided in the Road Act. Hence it is clear that the duty to maintain it, provided for in section 11 of the act, never arose, since the conditions precedent to such duty were lacking. This being true, Shaver v. Rice, *supra,* is controlling, and there is no merit in this contention of appellant.

It is next contended that the street improvement contracted for by the contract of March, 1923, was materially and essentially different from the work authorized by the ordinance of the preceding November because of the changes made after the bids were opened. It is argued that, because of this, the contract was void. The case of Staebler v. Anchorage, 186 Ky. 124, 216 S. W. 348, is relied upon. That case, however, is plainly distinguish-

able. There it was sought to fasten liability on a municipality for certain work done on the streets of that town. This work was prescribed by ordinance. Without any authority whatever, an official of the town arranged for radically different work which the contractor did, and it was for this work that he sued. Of course, the town could not be made liable under such circumstances. But that is not the case before us. The ordinance here in question specifically provided that the work was to be done in accordance with the plans and specifications on file, and which were made part of the ordinance by reference. These plans and specifications were complete in themselves; the blanks then being in them being plainly immaterial to this controversy. It also specifically provided that the city had the right to accept bids on certain streets and reject the same as to other streets. The plans and specifications referred to provided in no less than three different places for subsequent changes in the amount and character of the work to be done. On page 4 of the pamphlet containing these plans and specifications, and which is a part of the record herein, under the heading "Instructions to Bidders," it is specifically stated that the city reserves the right to increase or decrease the quantity or quantities or any or all of the items of the work provided for, together with the right to omit altogether any item or items of the work provided for. On page 7, under the heading "General Provisions," a like reference is made to the right of the city through the mayor and engineer to make changes, and on page 37, under the heading "Proposal," the contractor admits in making his bid the right of the city so to do.

It will thus be seen that the improvement ordinance of November specifically reserved the right to decrease the work as was done here. The advertisement for competitive bids, referring as it did to the plans and specifications necessarily informed those entitled to information of this right on the part of the city. When the bids were opened the appellee consented, as the record shows, to the omission of the work in question. And then on top of all this the city passed an amendatory ordinance providing that the work which it had decided to omit should be eliminated. Finally the city by ordinance accepted the work done as having been performed in accordance with the contract, and apportioned its cost to the abutting property. This being true, the case comes

squarely within the rule of City of Maysville v. Davis, 166. Ky. 555, 179 S. W. 463. In that case, the improvement ordinance adopted by reference the plans and specifications governing the work covered by the ordinance. Those plans and specifications authorized the engineer for the city and the council to make such alterations or modifications of the specifications or plans as they deemed best. They did change the plans by lessening the width improved along part of the street and by leaving the middle portion of another part occupied by street car tracks unimproved. After the work had been done in accordance with a contract embodying these changes, the council passed an ordinance accepting the work and apportioning the cost. Quoting sections 3567, 3573 and 3576 of the statutes, being the same sections as are here applicable, the court said:

"The present statutes seem to have intended to empower the cities of the fourth class to cause streets to be constructed at the cost of the abutting property, and to require such property to bear the costs of such construction, where they are benefited thereby, and to prevent the defeat of the enforcement of the liens for such costs, where such property is equitably entitled to bear a portion of the burdens, on account of any mistake or error of the council in its proceedings. In the case at bar, if the ordinance had provided, at the first, for the paving of the streets, except the portion occupied by the tracks of the railroad, and the setting of the concrete 'headers,' as was done by contract after the original contract had been made and changed, at the cost of the abutting property, no valid objection could have been made by the owners of the property. The property received the benefits of the improvement to the extent it was made, and it seems is equitably entitled to bear the cost of it. The defense, that the work was not done according to the contract, will not defeat the lien, for two reasons, one of which appears to have been in accordance with the contract, and the other is that the city accepted the work as having been done in accordance with the contract and it is made the duty of the court trying the case to make such orders and to correct such errors, as will result in justice to all parties concerned.

"In the absence of fraud or collusion between the council and the contractors, the acceptance of the work by the council, as having been done in accordance with the ordinance and contract, is conclusive upon the property owner."

This case concludes this contention of the appellant against it.

The last and most serious contention of the appellant is that to permit this assessment to stand would be to take its property without due process of law, and would be to deny it the equal protection of the law. It appears that the appellant's right of way running through the city of Earlington from north to south is 90 feet in width. There is a street paralleling and abutting on each side of this right of way; the street to the west, Railroad street, being the one involved in this litigation. The answer avers that the improvement of Railroad street here in question results in no benefit to the appellant's property. It further avers that the property on the opposite side of the street is 200 feet in depth. Under the charters of cities of the fourth class, assessments for street improvements are based on the front foot rule. Appellant therefore argues that, since its property, which is only 45 feet in depth (this depth being assumed by appellant because it is half way between the two streets bounding its right of way) is assessed the same amount per front foot as is property on the opposite side of the street, whose depth is 200 feet; therefore its property is being assessed four times as much as like property just opposite. For this reason, the Fourteenth Amendment to the federal Constitution is invoked. The argument is illusory.

First, with reference to the benefit: It appears from the pleadings that, by the resolution of necessit., by the ordinance providing for the work, and by the ordinance accepting the work and apportioning the cost against the property of the appellant, the legislative body, authorized to have this work done, determined that the property of the appellant was benefited. In Branson v. Bush, 251 U. S. 182, 40 S. Ct. 113, 64 L. Ed. 215, the Supreme Court, in discussing the law applicable to a like situation, and tracing its growth from Spencer v. Merchant, 125 U. S. 345, 31 L. Ed. 763, 8 Sup. Ct. Rep. 921, down through Wagner v. Leser, 239 U. S. 207, 60 L. Ed. 230, 36 Sup. Ct. Rep. 66, and Houck v. Little River Drainage District, 239

U. S. 254, 60 L. Ed. 266, 36 Sup. Ct. Rep. 58, declared the rule to be that the legislative determination as to what lands within a local improvement district will be benefited by an improvement is conclusive upon the owners and the courts, and can be assailed under the Fourteenth Amendment to the federal Constitution only where the legislative action is arbitrary, wholly unwarranted, a flagrant abuse, and by reason of its arbitrary character a confiscation of particular property. Though appellant's answer does aver that the improvement of Railroad street results in no benefit to its property, the answer also pleads all the legislative proceedings providing for this improvement, and which we have noted above. The legislative determination is conclusive that appellant's land is benefited unless appellant can show that this legislative action was wholly arbitrary, wholly unwarranted and a flagrant abuse of power. The averments of the answer fail to make out such a state of case. It is true appellant alleges that its right of way, 90 feet in width, is now being used exclusively as a right of way for its trains, and that the improvement of Railroad street does not add to the value of its land as a right of way. But this position was fully exposed in the case of L. & N. v. Barber Asphalt Paving Co., 197 U. S. 430, 25 S. Ct. 466, 49 L. Ed. 819, where, speaking to a like contention, the Supreme Court said:

> "The plea plainly means that the improvement will not benefit the lot because the lot is occupied for railroad purposes and will continue so to be occupied. Compare Chicago, B. & Q. R. Co. v. Chicago, 166 U. S. 226, 257, 258, 41 L. Ed. 979, 992, 17 Sup. Ct. Rep. 581. That, apart from the specific use to which this land is devoted, land in a good sized city generally will get a benefit from having the streets about it paved, and that this benefit generally will be more than the cost, are propositions which, as we already have implied, a Legislature is warranted in adopting. But, if so, we are of opinion that the Legislature is warranted in going one step further and saying that on the question of benefit or no benefit the land shall be considered simply in its general relations and apart from its particular use. See Illinois C. R. Co. v. Decatur, 147 U. S. 190, 37 L. Ed. 132, 13 Sup. Ct. Rep. 293. On the question of benefits the present use is simply a prognostic, and the plea of

prophecy. If an occupant could not escape by professing his desire for solitude and silence, the Legislature may make a similar desire fortified by structures equally ineffective. It may say that it is enough that the land could be turned to purposes for which the paving would increase its value. Indeed, it is apparent that the prophecy in the answer cannot be regarded as absolute, even while the present use of the land continues; for no one can say that changes might not make a station desirable at this point; in which case the advantages of a paved street could not be denied. We are not called on to say that we think the assessment fair. But we are compelled to declare that it does not go beyond the bounds set by the Fourteenth Amendment of the Constitution of the United States."

See also Kansas City Southern R. R. v. Road District, 266 U. S. 379, 45 S. Ct. 136, 69 L. Ed. 339.

The second phase of appellant's argument in connection with its invocation of the Fourteenth Amendment deals with the claimed discrimination between its property and that opposite to it on the other side of the street, based on the difference in the depth of the respective lots. The rule with regard to manner of apportioning the cost of the benefits is the same as that involved in the determination of the benefits. Thus in the Kansas City Southern R. R. Co. case, *supra,* the Supreme Court at page 386 (45 S. Ct. 139), said:

"And only where there is manifest and unreasonable discrimination in fixing the benefits which the several parcels will receive can the legislative determination be said to contravene the equal protection clause of that (the Fourteenth) Amendment."

The mere fact that appellant's lot is, to concede the extreme position it has taken in that regard, only 45 feet in depth, while property on the opposite side is 200 feet in depth, does not of itself establish an unreasonable discrimination in the assessing of the improvement here in question on the front foot rule. Essentially the benefit derived from a street improvement is the improved method of ingress and egress to the abutting property. While in some measure the value of property per front foot will vary in proportion to the depth of that prop-

erty, the variation is by no means in arithmetical proportionate to the depth of the property. And a lot but 45 feet in depth, though it may not be as valuable as a lot opposite which is 200 feet in depth, may yet have its value, whatever it may be, increased by practically the same amount as that of the opposite lot due to an improved method of ingress and egress to them. Further, it must be remembered that exactitude is not required in these matters, and, if no substantial discrimination is worked, the apportionment will be upheld. In the case of Vogt v. City of Oakdale, 166 Ky. 810, 179 S. W. 1037, Vogt owned a corner lot fronting 50 feet on the Grand boulevard and 200 feet on Kenton street. All the other lots on Kenton street fronted 50 feet on that street and ran to a depth of 200 feet. The city of Oakdale proposed to improve Kenton street and to apportion the cost on the abutting property under the front foot rule. By this method, Vogt's property would be assessed for 200 front footage, though but 50 feet in depth, while the other lots would be assessed at the same rate per front foot, though 200 feet in depth. In holding this worked no discrimination, we said:

"Neither are they violative of the Fourteenth Amendment of the United States Constitution. It does not appear that any property has been or is about to be taken without due process of law, nor that a tax assessment is about to be made which imposes upon her an unequal burden. The fact that the property bears the expense of improvement according to frontage rather than superficial area does not render it unconstitutional, nor of itself make the burden of taxation unequal. Either plan may inflict some hardships, but it is within the power of the Legislature to create a taxing district for improvements upon either plan. Louisville, etc. v. Barber Asphalt Paving Co., 197 U. S. 430, 25 Sup. Ct. 466, 49 L. Ed. 819; Shumate v. Heman, 181 U. S. 402, 25 Sup. Ct. 645, 45 L. Ed. 916, 922; French v. Barber Asphalt Paving Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879."

The fact that Vogt's lot was a corner lot was not stressed as the basis for upholding the method of assessment there involved but as answering the argument that it would also have to stand for the improvement of Grand boulevard.

From the foregoing, we conclude that appellant has failed to show such an unwarranted discrimination against its property as entitles it to the protection of the Fourteenth Amendment.

We are invited by the appellant to decide whether or not the lien here asserted is superior to the mortgage liens now existing against this right of way. This we decline to do, as that question was especially reserved in the lower court, and is not yet decided.

Judgment affirmed.