## City of Hazard v. Duff et al.
## Duff v. Holliday et al.

Nov. 3, 1943.

W. E. Faulkner for City, of Hazard.

John E. Campbell for Duff.

E. C. Wooton, W. E. Faulkner, D. G. Boleyn, and P. T. Wheeler for Holliday and others.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

The first styled appeal is by the City of Hazard from a judgment holding certain street improvement bonds invalid as against abutting property owners, and the city liable, Duff as trustee being the holder of those in question. The second appeal is by Duff, trustee, prosecuted on the contention that in the event this court holds that the city is not liable, then he would be entitled to have judgment against the owners of the improved property.

On July 22, 1922, the city by ordinance directed improvement of certain streets, and authorizing issuance of bonds to pay for the improvement. The property involved is a block fronting on Maple Street 290 feet, assessed on December 11, 1924 in the name of Sophia Combs, apparently on the same day of issuance of the bonds. In September 1931, nearly nine years after assessment, and seven years after issuance of bonds, a delay not attempted to be explained, certain banks which had acquired the bonds issued against this frontage, along with some fifty or more other properties, instituted suit to enforce the lien created by issuance of the bonds.

It was alleged that the property owners were in default of principal and interest. The city was made defendant, it being alleged that it was bound under the law

to collect all street improvement assessments for the benefit of the bondholders, and that the assessments against all the property involved exceeded 50 per cent of the value thereof, and the city was due the plaintiffs for liens or assessments which exceeded the 50 per cent valuation, and that the city had refused to undertake collections. The only relief asked against the city was for judgment in case it should develop that the levies exceed 50 per cent of the value of the involved lots.

The case, insofar as the 290 feet frontage is concerned, dragged along until October 1935 when Duff intervened, alleging that he had at some undisclosed time become the owner of the bonds, and under order of the court the prosecution continued in his name. The case dragged on until November 1937 when Duff amended, making defendants the heirs of D. Y. Combs, claiming interest in 190 of the 290 feet frontage, and Tolbert Holliday claiming an interest in the same property.

Following this, and in June 1938, Holliday filed answer alleging that in October 1924 D. Y. Combs, admittedly the owner of 190 feet of the frontage, lots 1, 2 and 3, had executed to him a note for $1290.84, due and unpaid, and had executed a mortgage on the three lots. The petition and amendments had alleged that property owners (all involved) had at the time of completion of the improvements signed and delivered the ten year payment plan, the effect of which as per statute was to waive all irregularities in the passage of the ordinances, and estopping themselves from making defense to any action seeking to enforce the lien.

Holliday in an attempt to have his lien declared superior to the statutory lien, asserted that Sophia Combs (admittedly the holder of title to 100 feet, lots 4 and 5) and Richard Combs, her husband, had no interest in lots Nos. 1, 2 and 3, and further that they had never accepted the 10 year payment plan. By way of cross-petition against the heirs of D. Y. Combs, he having died in May 1937, the heirs inheriting, he plead that no assessment had been made as against the property of D. Y. Combs, his widow or heirs, and that none of them had ever executed agreement to accept the ten year plan. Since Holliday claimed no sort of interest in the lots owned by Sophia Combs, his pleading with respect to her lots was of no effect. He made the additional defense, apparently as to all the property, that since the

parties had not agreed to the ten year plan, the five year statute of limitation barred any action on the part of the bondholder, on the theory that in the absence of the agreement, and in case of nonpayment by the property holders, for a fixed period, the cause of action was in the city and the period of limitation had expired before suit was instituted.

In June 1939 Sophia Combs answered denying allegations of plaintiff's pleadings, saying that she held no title to the D. Y. Combs' lots, and asserting that she was the title holder of lots 4 and 5, denying that she had been presented with or signed a ten year payment plan. Duff categorically denied the Holliday pleading. The city had theretofore filed answer to the original petition, in the main a denial, but setting up its claim for ad valorem taxes on the 290 feet frontage, asserting superiority as against bond liens, a matter not involved here.

After the plea by Sophia Combs, and some testimony had been presented, Duff filed an amended petition which changed the situation. After adopting original pleadings not inconsistent with the amendment, he plead that since at the time of the assessment of the 290 feet Sophia Combs only owned 100 feet, the assessment was void as to the excess. He further said, "It has developed since the filing of the suit that Sophia Combs did not sign an application for the ten year payment plan, and that any and all bonds issued against her property are void," even to the extent of the assessment of the 100 feet frontage. For this reason it was asserted the plaintiff ought to recover of the city the total of $1704.70, for which sum plus interest, it asked judgment against the city, without alternative plea.

To this pleading the city was satisfied to file answer which merely denied allegations, raising no other issue. This completed the pleadings, and the court adjudged (1) that Holliday's lien against the D. Y. Combs' property superior to that of the bondholders. (2) That Sophia Combs never owned more than 100 feet frontage, and any assessment as against her to the extent of excess frontage was void. (3) "The proof conclusively shows that Sophia Combs did not sign application for the ten year bonding plan; signed no waiver of any kind, and did not authorize any one to sign any such application or waiver, and for this reason the bonds representing the amount expended for improving the 100 feet

owned by the defendant are void.'' The court then held that there had been no legal assessment against the 190 feet assessed in the name of Sophia Combs, owned and in the possession of D. Y. Combs and his heirs (who had signed no waiver), and as to this branch of the case the petition was dismissed. The court then adjudged that all the bonds issued against all the property, and insofar as the pleadings sought lien against the 290 feet, the petitions were dismissed, the court ordering lots 1, 2 and 3 sold to satisfy Holliday's lien. Judgment was rendered against the city for the assessment against the whole frontage.

The proof shows that Sophia Combs owned no more than 100 feet, the title to the remainder being in D. Y. Combs. The various lots adjoined each other, and it is shown that Sophia and Richmond Combs manifested proprietorship. While the assessment was made against the 290 feet on December 11, 1924, there is in the record a document which in terms of the statute accepts the ten year plan and waives defenses. This purported to bear the signature of Richmond and Sophia Combs as of date January 1, 1925. It is also shown that this waiver was never presented to or signed by Sophia Combs, but to and by the husband who owned no interest in any of the lots, a matter not disclosed to her until after the suit was filed. This paper may in some measure account for inaction on the part of the city. This evidence is not contradicted, nor is it attempted to be shown that agency existed; on the other hand Sophia Combs says that she did not authorize the husband to sign.

Counsel for appellant takes the position that after street improvement has been completed in conformity with the statute, and accepted by the municipality, the lien provided and declared by ordinance attaches and may not be defeated by objections thereafter raised. There can be little question but what the lien of the city attached as provided by the sections quoted in brief, and had the city undertaken to enforce its lien in the way and manner therein provided, the defense of wrongful assessment would have availed Sophia Combs little relief, since we have held in numerous cases that where the property was described, the fact that there was a mistake in the description would not defeat the lien created by statute. The lien created by the statute is against the property. Louisville & N. R. Co. v. Southern Roads

Co., 217 Ky. 575, 290 S. W. 320; Turner v. Griffith, 266 Ky. 371, 99 S. W. (2d) 202. Those and other cases make it clear that where the city had followed the statutes in making assessments (City of Maysville v. Davis, 166 Ky. 555, 179 S. W. 463), that lots which are benefited by the improvement should bear a just proportion of the cost, regardless of errors in the assessment proceedings, including error in description, or in the true name of the property owners.

Here the simple question presented is whether or not under the showing made, the bonds were validly issued as against the Sophia Combs' property. Counsel for appellant states the question in this manner: "The only phase of the case to be considered here is that touching the assessment and tax of $1749.70 against the property of Richmond and Sophia Combs, located on Maple Street." The insistence is that the entire assessment was valid.

The court found as a matter of fact that there had been no acceptance of the ten year payment plan, or waiver, and on this point there can be no doubt. In the absence of the statutory agreement the rights of the city or a contractor to proceed against a property owner whose lots have been improved are controlled by Ky. St., Sections 3564 to 3574, inclusive. However, we are not compelled to review the many cases relied on by appellant in effort to show liability by Sophia Combs for the whole assessment, or the nonliability of the city. The procedure and practice of the case as it progressed over the long period of years would not authorize a judgment against Sophia Combs, and in the absence of more effective pleading on the city's part, relieve it of the liability.

The amended petition of Duff is plain and unequivocal. Upon being satisfied in his mind that Mrs. Combs had never executed or authorized execution of waiver, he, to all intents and purposes, dismissed the original petition and sought judgment against the city. There is no question but that the plaintiff may abandon his cause of action by announcing in open court his intention and purpose, or by his acts or omissions. 1 C. J. S., Actions, sec. 138. Here the abandonment was complete and the grounds were upon defenses set up by Mrs. Combs. See Jennings v. Fain, 226 Ky. 290, 10 S. W. (2d) 1101; Kansas Pac. R. Co. v. Hopkins, 18 Kan. 494; Spiritual Temple v. Wheeler, Tex. Civ. App., 28 S. W. (2d) 253.

634

The city contented itself with a simple denial of the allegations of Duff's amended petition. It did not deny the pleadings of the property owner or of Holliday; it asked no affirmative or alternative relief. The only issue submittable to the court on the pleadings as finally made up, was whether or not the owners had signed the ten year payment plan. The observations thus far answer appellants' contention that Sophia Combs was estopped by failing to raise objections; by standing by and finally accepting the benefits of the improvements. There is not, as we read the record, any pleading either by Duff or the city which injects the issue of estoppel. The general rule is that estoppel to be available must be plead. Asher v. Pioneer Coal Co., 233 Ky. 661, 26 S. W. (2d) 543; Federal Surety Co. v. Guerrant, 238 Ky. 562, 38 S. W. (2d) 425; American Surety Co. of N. Y. v. Noe, 245 Ky. 42, 53 S. W. (2d) 178. There was no demurrer to any of the pleadings which undertook to evade liability, or place it upon the city.

In this state of pleadings we find it difficult to reach any conclusion other than as expressed by the chancellor. Our conclusions obviate the necessity of going into matters raised on the appeal of Duff. However, in the appeal of Duff v. City etc., the motion to dismiss is sustained. Judgment in the case of City of Hazard v. Duff is affirmed. Costs in the Duff appeal to go against appellant.